## Kimberly-Clark Corporation *v.* Orest T. Dubno, Commissioner of Revenue Services (12967)

Peters, C. J., Healey, Santaniello, Callahan and Hull, Js.

Argued March 3—decision released June 16, 1987

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (defendant).

*Christopher F. Droney,* with whom was *John M. Horak,* for the appellee (plaintiff).

Arthur H. Healey, J. This is an appeal from the judgment of the trial court sustaining the plaintiff's appeal from a determination of the defendant, the commissioner of revenue services (commissioner), uphold-

ing the assessment against the plaintiff, Kimberly-Clark Corporation, for Connecticut sales and use taxes in the amount of $137,366.66, of which $103,397.65, plus interest, is in dispute. The commissioner raises three issues on this appeal: (1) whether the trial court should have accepted the commissioner's findings of fact unless they were clearly erroneous; (2) whether the commissioner's declaratory ruling estopped him from making a lawful assessment pursuant to chapter 219 of the General Statutes;[1] and (3) whether the trial court's findings of fact are clearly erroneous in light of the evidence before it.[2] We find no error.

The facts found by the trial court include the following: The plaintiff is a large national manufacturer of paper and related products. It has several plants throughout the country, including one located in New Milford, which employs approximately 1400 people. In 1978, the plaintiff decided to make substantial changes to its New Milford plant. The changes included installing a new production line at an estimated cost of $17 million and dismantling, expanding and modernizing an existing production line at an estimated cost of $7 million. These production lines are each over 100 yards long and are "completely integrated and automated."

On August 31, 1978, the plaintiff wrote to the commissioner "to request a ruling, with respect to the Connecticut sales and use tax exemption on manufacturing machinery and equipment" for the two lines it

[1] Chapter 219 of the General Statutes is entitled "Sales and Use Tax" and provides, inter alia, for the imposition of the sales and use tax as well as the exemptions from that tax.

[2] As an alternative ground upon which the judgment may be affirmed, the plaintiff presents the following issue: "Must an item of machinery constitute a machine in and of itself or be purchased in conjunction with a machine in order to be exempt from the Connecticut sales and use tax pursuant to Section 12-412 (34) of the Connecticut General Statutes?" Because of our disposition of the commissioner's claims on appeal, we need not reach the merits of this alternative basis for affirming the judgment.

intended to install. The letter stated: "[A]ll the machinery for the new production line has been designed by [the plaintiff] and cannot be purchased from a single supplier. The machinery will be fabricated by [the plaintiff]. Components for such machine fabrication will be purchased from several suppliers." The letter then itemized the specific units of processes, systems, sections and controls of the new and the modernized production lines, and ended by requesting "that all the above described processes and machinery be ruled exempt from sales and use taxation."

A conference on the plaintiff's request for a ruling was held on September 5, 1978. Present at the conference were Nick D. Hansen, the plaintiff's vice president and tax counsel; David L. Hansell, the plaintiff's administrative manager for the expansion of products; Ralph Madden, the plaintiff's project engineer; Terence J. O'Neil, the commissioner's division chief, legal/technical division; and Solomon J. Karam, the commissioner's director of legal division, public relations and research. At this conference, Madden explained the design and operation of the two production lines. Most of the conference, however, was spent going over the itemized list of specific units of the two lines which had been included in the plaintiff's request for a ruling. The commissioner's representatives marked the specific items with an "E" indicating tax exempt, a "T" indicating taxable, and a "?" indicating that they were not sure whether the item was exempt and they needed more information to make such a determination. In the course of the discussions, the plaintiff raised the issue of whether, as a condition of sales tax exemption, the plaintiff had to have the two production lines fabricated by its Wisconsin subsidiary "Kim-Tech." The commissioner's representatives indicated that "that would not be necessary and [that] it would only hurt Connecticut by forcing construction out of the state."

On September 11, 1978, O'Neil wrote to the plaintiff on behalf of the commissioner, stating that he was "returning a copy of the list [which the plaintiff had] submitted with [its] letter of August 31, 1978, indicating [the commissioner's] decision as to taxability." "Items on the list were marked 'E,' 'T,' and '?,' with only two comments: as to machine platforms and guards—'E if purchased as part of a complete unit,' and as to stock preparation equipment—'E if purchased in conjunction with a machine.' "

The plaintiff supplied additional information as to the questionable items and eventually all the items on the plaintiff's list included in its letter of August 31, 1978, were ruled upon by the commissioner. Of the thirty-seven individual units of the new production line, thirty-five were given tax exempt status, and of the thirteen individual units of the modernized production line, eleven were given tax exempt status. The commissioner allowed an exemption for machine controls on the new production line but denied an exemption for the same controls on the modernized line, on the ground that the latter would not be purchased "in conjunction with new machinery" but instead "at a later date to update existing machinery.'"

Having obtained what the plaintiff believed to be a favorable ruling of tax exemption based on its letter request of August 31, 1978, the plaintiff proceeded to construct the two production lines.

Following the construction of the two production lines, the commissioner audited the plaintiff as to sales and use tax for the period December 1, 1976, through April 30, 1980. As a result of the audit, the commissioner determined that the plaintiff owed taxes in the amount of $137,366.66 of which $103,397.65, plus interest, is disputed.

The items found by the defendant to be taxable (the disputed devices) were in the nature of switch gears, valves, cables, controllers, bearings, and the like, installed in the plaintiff's new and rebuilt production lines. As to the disputed devices, the trial court noted that the parties stipulated as follows:

"1. All of the disputed devices are used 'directly in a manufacturing production process,' as such phrase is used in [General Statutes] Sec. 12-412 (34).[3]

"2. None of the disputed devices, by themselves, constitute[s] a 'basic machine itself,' as such phrase is used in Sec. 12-412 (34).

"3. All of the disputed devices are 'component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures,' or 'equipment or devices used or required to control, regulate or operate the machinery,' as such terms are used in Sec. 12-412 (34).

"4. All of the disputed devices were purchased separately from any portion of the production lines that may constitute a basic machine itself, as defined in Sec. 12-412 (34).

"5. All of the disputed devices were purchased at the time of installation of the two production lines, were

---

[3] General Statutes § 12-412 (34) provides: "EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items:

\* \* \*

"(34) Machinery used in manufacturing or agricultural production. Sales of and the storage, use or other consumption of machinery used directly in a manufacturing or agricultural production process. The word 'machinery' as used in this subsection means the basic machine itself, including all of its component parts and contrivances, such as belts, pulleys, shafts, moving parts, operating structures and all equipment or devices used or required to control, regulate or operate the machinery, but excluding office equipment or data processing equipment other than numerically controlled machinery used directly in the manufacturing process."

necessary for the initial operation of those lines and are not repair or replacement parts.

"6. The production lines each constitute a 'basic machine itself,' as that phrase is used in Sec. 12-412 (34).

"7. All the disputed devices were included in plaintiff's letter of August 31, 1978 in categories later designated as exempt by the [Commissioner's] ruling."

The plaintiff, asserting that it had been "aggrieved by the action of the commissioner . . . in fixing the amount of such tax," requested an administrative hearing, pursuant to General Statutes § 12-421. After a hearing, the deputy commissioner of revenue services rendered a decision upholding the assessment. The plaintiff, thereafter, took a timely appeal to the Superior Court pursuant to General Statutes § 12-422.[4]

At trial, the commissioner essentially attempted to establish that the exemption for the disputed devices

[4] General Statutes § 12-422 provides: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425 may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

granted by the commissioner's letter ruling was conditional upon the fact that the production lines were to be fabricated by an out-of-state subsidiary of the plaintiff. The commissioner argued that to have ruled any other way would have been contrary to his interpretation of § 12-412 (34) that "component parts and contrivances, such as belts, pulleys, shafts . . . and devices used . . . to control . . . machinery" were exempt only if purchased from the vendor of the basic machine and at the same time. See Regs., Conn. State Agencies § 12-426-11 (A).[5] Holding that the commissioner's "exemption rulings are binding on him and enure to the plaintiff's benefit on grounds of statute, estoppel and elemental fairness," the trial court sustained the plaintiff's appeal. The court ordered the commissioner to return to the plaintiff any payment of the assessment and interest thereon already made by the plaintiff. On January 26, 1986, the commissioner appealed to the Appellate Court. On May 14, 1986, this court transferred the appeal to itself. See Practice Book § 4023 (formerly § 3004A).

I

The commissioner's first claim of error is that the trial court erred in conducting the appeal de novo. The commissioner argues that under the appropriate standard of review the trial court should have accepted his findings of facts unless they were clearly erroneous.

[5] The regulations of Connecticut state agencies, § 12-426-11 (A) provided in part: "Contrivances, such as belts, pulleys, shafts and operating structures accessory to such basic machine and equipment and devices used to control, regulate or operate it and spare parts for its repair will be subject to the 7% tax rate when purchased separately. The 2½% tax rate is applicable only and if any of these accessory parts are purchased as a package with the basic machine."

In 1980 the commissioner repealed § 12-426-11 (A) and replaced that regulation with § 12-426-11b.

The plaintiff argues that under General Statutes § 12-422, the trial court was empowered to conduct the appeal de novo.

The plaintiff's appeal to the trial court was taken, not under the Uniform Administrative Procedure Act, which excludes tax appeals; General Statutes § 4-186;[6] but instead under § 12-422. Although this court has never specifically held that § 12-422 empowers a trial court to hear an appeal de novo, the language of that statute is similar to the language used in other Connecticut tax appeal statutes which have been interpreted to require a de novo review by the trial court. For example, appeals taken pursuant to General Statutes § 12-237, which concerns the Connecticut corporation business tax, and General Statutes § 12-597, which concerns the quarterly tax on gross earnings from the sale of petroleum products, are conducted de novo. See, e.g., *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 588, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 421, 521 A.2d 569 (1987). Similarly, property tax appeals taken pursuant to General Statutes § 12-118 are conducted de novo. See, e.g., *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 303, 397 A.2d 1367 (1978); *Yale University* v. *New Haven,* 169 Conn. 454, 464, 363 A.2d 1108 (1975); *O'Brien* v. *Board of Tax Review,* 169 Conn. 129, 130–31, 362 A.2d 914 (1975); *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 239–40, 348 A.2d 641 (1974).

---

[6] General Statutes § 4-186 provides: "EXEMPTION OF UNEMPLOYMENT COMPENSATION AND EMPLOYMENT SECURITY APPEALS. Appeals from the decisions of the administrator of the unemployment compensation act, appeals from decisions of the employment security appeals referees to the board of review, and appeals from decisions of the employment security board of review to the courts, as is provided in chapter 567, and appeals from the commissioner of revenue services to the courts, as provided in chapters 207 to 212a, inclusive, 214, 215, 219, 221, 222, 224 and 225 are excepted from the provisions of this chapter."

In addition, Practice Book §§ 257 (d) and 4095 (formerly § 3088) imply that tax appeals receive a de novo review in the Superior Court. See also *Greenman's Trucking, Inc.* v. *Department of Revenue Services,* 6 Conn. App. 261, 262 n.1, 504 A.2d 568 (1986) (parties agreed that an appeal taken pursuant to § 12-422 is an appeal de novo). We note also that in *H. B. Sanson, Inc.* v. *Tax Commissioner,* 187 Conn. 581, 586, 447 A.2d 12 (1982), which involved an appeal taken pursuant to § 12-422, this court looked to a finding made by the trial court, not the commissioner, and noted that "the trial court was not bound to limit its reasoning to that utilized by the tax commissioner . . . ."

In arguing that the trial court erred in conducting an appeal de novo, the commissioner places great emphasis on this court's decision in *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353–55, 64 A.2d 330 (1949). *Jaffe,* which is a pre-Uniform Administrative Procedure Act decision, does not avail the commissioner because the Uniform Administrative Procedure Act now expressly excludes tax appeals. As noted, our cases provide that a party appealing from an adverse ruling of the commissioner of revenue services is "entitled to a plenary review of its challenge of its tax assessment, and is not limited to an administrative appeal under the Uniform Administrative Procedure Act." *Texaco Refining & Marketing Co.* v. *Commissioner,* supra; see also *George P. Gustin Associates, Inc.* v. *Dubno,* 203 Conn. 198, 202–203, 524 A.2d 603 (1987), citing *Schlumberger Technology Corporation* v. *Dubno,* supra. The trial court did not err in conducting this appeal de novo.

## II

The commissioner's second claim is that the declaratory ruling which he gave to the plaintiff did not estop him from making a lawful assessment of tax pursuant

to chapter 219 of the General Statutes. The commissioner's first argument is that, as an agent of the state, he is not subject to estoppel. His second argument is that, assuming he is subject to estoppel, the requisite elements have not been established in this case.

Citing *McGowan* v. *Administrator,* 153 Conn. 691, 694, 220 A.2d 284 (1966), the commissioner argues that he is not subject to estoppel. Specifically, he maintains that "he cannot waive the rights of the state, nor can he, by any act of his, estop the state from asserting its rights . . . ." See also *Harper* v. *Tax Commissioner,* 199 Conn. 133, 142 n.10, 506 A.2d 93 (1986). We disagree.

In *McGowan* v. *Administrator,* supra, and in *State* v. *Metrusky,* 140 Conn. 26, 30, 97 A.2d 574 (1953), a case cited in *McGowan,* we held that a claim for estoppel could not be based on the particular actions of the unemployment compensation administrator and the commissioner of welfare, respectively. In those cases, we recognized that the particular state agents had acted outside of their authority. *McGowan* and *Metrusky* are inapposite to this case. In this case, the commissioner had express statutory authorization to give the declaratory rulings, which are the subject of this appeal. See General Statutes § 4-176.

Although this court has not had occasion to determine specifically whether the conduct of the department of revenue services gives rise to estoppel, this court has said that, in certain limited circumstances, estoppel may be invoked against a municipality. See, e.g., *Zoning Commmission* v. *Lescynski,* 188 Conn. 724, 731, 453 A.2d 1144 (1982), and cases cited therein. In *Lescynski,* we recognized that as a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions. *Zoning Commission* v. *Lescynski,* supra; see also *Dupuis* v. *Sub-*

*marine Base Credit Union, Inc.,* 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Bianco* v. *Darien,* 157 Conn. 548, 556, 254 A.2d 898 (1969); *State* v. *Stonybrook, Inc.,* 149 Conn. 492, 501, 181 A.2d 601, cert. denied, 371 U.S. 185, 83 S. Ct. 265, 9 L. Ed. 2d 227 (1962). Nevertheless, we noted that an exception to this general rule is made where the party claiming estoppel would be subjected to a substantial loss if the public agency were permitted to negate the acts of its agents. *Zoning Commission* v. *Lescynski,* supra; *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 354. We perceive no reason why this limited exception should not apply in an appropriate case to estop the department of revenue services, especially in view of its statutory authority to render declaratory rulings. See *Connecticut Bank & Trust Co.* v. *Tax Commissioner,* 178 Conn. 243, 423 A.2d 883 (1979) (this court dismissed the plaintiff's claim of estoppel not because the commissioner of revenue services is not subject to estoppel but because the elements of estoppel had not been established); see also *George W. Davis & Sons, Inc.* v. *Askew,* 343 So. 2d 1329, 1332 (Fla. 1977); *Mountain States Advertising, Inc.* v. *Bureau of Revenue,* 89 N.M. 331, 332, 552 P.2d 233 (1976); *Advance Pipe & Supply Co.* v. *Wisconsin Department of Revenue,* 128 Wis. 2d 431, 439–40, 383 N.W.2d 502 (1986); *Department of Revenue* v. *Family Hospital,* 105 Wis. 2d 250, 253–54, 313 N.W.2d 828 (1982).

The commissioner claims that, assuming he is subject to estoppel, the requisite elements of an estoppel are missing in this case. The commissioner's argument as to this claim is twofold. The commissioner argues that he never ruled that the machinery in question was exempt and that if he did so rule, it was unreasonable for the plaintiff to have relied on that ruling, in light of General Statutes § 12-412 (34) and § 12-426-11 (A) of the regulations of Connecticut state agencies.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi,* 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.,* [supra]; *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53–54, 184 A.2d 797 (1962)." *Zoning Commission* v. *Lescynski,* supra. In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. Id.; *Dupuis* v. *Submarine Base Credit Union, Inc.,* supra, 354. As noted, this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. " '[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.' *Pet Car Products, Inc.* v. *Barnett,* [supra]; *Linahan* v. *Linahan,* 131 Conn. 307, 327, 39 A.2d 895 [1944]." *Reinke* v. *Greenwich Hospital Assn.,* 175 Conn. 24, 28–29, 392 A.2d 966 (1978).

The commissioner claims that he never ruled the disputed devices "exempt." We disagree.[7] At trial, the

---

[7] At oral argument, the commissioner pointed to Exhibit G, which lists the specific items constituting the disputed devices, and argued that none of the items listed in Exhibit G is listed in the ruling request, Exhibit A, submitted by the plaintiff. The commissioner argued that the ruling was based on Exhibit A, not Exhibit G. We disagree. The commissioner expressly stipulated that "[t]he Disputed Devices are listed on Exhibit G . . . . All

commissioner expressly stipulated that "[a]ll the disputed devices were included in the plaintiff's letter of August 31, 1978, in categories later designated as exempt by [the] Commissioner's ruling." The commissioner argued at trial that this exemption ruling was conditioned on a requirement that the disputed devices be purchased from the vendor of a basic machine and at the same time. The trial court found that the commissioner never made this condition "clear in [his] rulings," and that "[i]f the [Commissioner] meant to condition his rulings of exemption . . . he had the obligation expressly to say so." As we will discuss in part III of this opinion, this finding of the trial court was supported by the evidence. We, therefore, are unpersuaded by the commissioner's argument that he should not be estopped from assessing the tax because he never exempted the disputed devices in the first place.

The commissioner also argues that he should not be estopped because it was unreasonable for the plaintiff to rely on his rulings. It is clear that the commissioner had the authority to issue the ruling requested by the plaintiff. General Statutes § 4-176[8] grants this authority and authorizes the commissioner to provide by regu-

of the Disputed Devices were included in Plaintiff's letter of August 31, 1978 . . . in categories later designated as exempt from tax by [the commissioner] in the rulings issued by [the commissioner] at the September 4, 1978 meeting . . . ." Given this stipulation, we fail to see how the commissioner can now say that the items listed in Exhibit G are somehow not included in the exemption ruling which he gave to the plaintiff.

[8] General Statutes § 4-176 provides: "DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a suffi-

lation the procedure for the filing and prompt disposition of petitions seeking such rulings. According to the statute, these declaratory rulings "have the same status as agency decisions or orders in contested cases." At trial, Karam and O'Neil testified that the departmental regulations which set forth the procedure for a taxpayer requesting a declaratory ruling, such as that issued by the commissioner to the plaintiff, had not been violated. See Regs., Conn. State Agencies § 12-2-4.[9] Karam testified that when the commissioner gives declaratory rulings, he "intends" that such rulings "shall be relied upon" by taxpayers and "expects" that he will be bound by the ruling. The court found that, in reliance on the "favorable ruling," the plaintiff proceeded to construct the two production lines. This finding is supported by the testimony of both Hansen and Hansell who indicated that the favorable ruling was the

cient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

[9] The regulations of Connecticut state agencies, § 12-2-4 then provided: "PETITION FOR DECLARATORY RULING

"The Tax Department will accept a petition for declaratory ruling as to the applicability of any statute or regulation administered by the Tax Department in the following form:

"(a) A petition stating the factual background of the issue must be in writing and include or have attached thereto a certificate indicating the manner in which and the date on which it is being filed with the Tax Department at the main office at 92 Farmington Avenue, Hartford, Connecticut 06115.

"(b) The petition shall be signed by the petitioner and shall include his address for purposes of reply.

"(c) A petitioner shall serve a copy of the petition on any party who he has reason to believe may not otherwise have knowledge thereof and may fairly have an interest therein. The petition or certificate shall indicate such service therein.

"(d) The petition shall state clearly the question of applicability upon which it seeks a ruling.

"(e) The petition shall state the position of the petitioner with respect to the question of applicability.

"(f) The petition may include an argument in support of the position of the petitioner with such legal citation as may be appropriate."

basis for going forward with the construction of the production lines. For example, Hansell said: "I had no recollection that it was even a consideration to use Kim-Tech when we left that meeting. You know, if there had been that consideration I would have had to [go] to the project manager and pursued that further." Given the express statutory authority for the ruling and the testimony of Karam that the commissioner intends for taxpayers to rely on such rulings, we cannot say that the plaintiff's reliance on the ruling was unreasonable. To the contrary, the plaintiff's conduct in writing to the commissioner requesting a letter ruling and its subsequent reliance on that ruling was completely reasonable. Rather than construct the production lines and then await a decision of the commissioner as to the taxability of its actions, the plaintiff took advantage of a provision in our statutes which allowed it to determine ahead of time the tax consequences of its proposed business decision. Despite the commissioner's argument to the contrary, the plaintiff justifiably relied on the ruling given to it by the commissioner. The trial court did not err in concluding that the commissioner is subject to estoppel and that the requisite elements of estoppel had been established in this case.[10]

---

[10] It is the practice of the Internal Revenue Service to issue similar rulings stating the tax consequences of a completed or contemplated transaction. "A 'ruling' is a written statement issued to a taxpayer or his authorized representative by the National Office which interprets and applies the tax laws to a specific set of facts." 26 C.F.R. § 601.201 (a) (2). Although the Internal Revenue Service has the authority to revoke or modify a ruling after it has been given, revocations or modifications are rarely applied retroactively to the taxpayer to whom the ruling was originally issued. The regulations provide: "Except in rare or unusual circumstances, the revocation or modification of a ruling will not be applied retroactively with respect to the taxpayer to whom the ruling was originally issued or to a taxpayer whose tax liability was directly involved in such ruling if (i) there has been no misstatement or omission of material facts, (ii) the facts subsequently developed are not materially different from the facts on which the ruling was based, (iii) there has been no change in the applicable law, (iv) the ruling was originally issued with respect to a prospective or pro-

## III

The commissioner's final claim is that "[t]he trial court's decision is dependent upon certain factual findings not supported by the record." As to this claim, the commissioner takes issue with the following findings: "(1) the 'commissioner's people' never made clear their position that machine component parts purchased separately from basic machines were not exempt; (2) [the] plaintiff never orally at the conference changed the basic fact that 'all the machinery would be fabricated by the plaintiff and components for such machinery would be purchased from several suppliers'; and (3) '[n]or did [the] commissioner make his rulings of exemptions conditioned on different facts.' " The commissioner also takes issue with the court's finding that when the question of whether it was absolutely necessary to use a subsidiary was raised by the plaintiff, the "commissioner's people said that it would not be necessary and it would only hurt Connecticut by forcing construction out of the state."

The commissioner argues that "[i]n fact, the testimony by three of the four witnesses is uncontroverted that the [commissioner's] personnel told the plaintiff's

posed transaction, and (v) the taxpayer directly involved in the ruling acted in good faith in reliance upon the ruling and the retroactive revocation would be to his detriment." 26 C.F.R. § 601.201 (*l*) (5). All of these considerations are applicable in this case.

We also note that "[i]t is well settled that the doctrine of equitable estoppel, in proper circumstances, and with appropriate caution, may be invoked against the United States in cases involving internal revenue taxation. *Joseph Eichelberger & Co.* v. *Commissioner,* [88 F.2d 874 (5th Cir. 1937)]; *Perkins et al.* v. *Thomas, Collector,* [86 F.2d 954 (5th Cir. 1936)], affirmed 301 U.S. 655, 57 S. Ct. 911, 81 L. Ed. 1324 [1937]." *Simmons* v. *United States,* 308 F.2d 938, 945 (1962). It has also been said that "[a]lthough estoppel is rarely a proper defense against the government, there are instances where it would be unconscionable to allow the government to reverse an earlier position. *Schuster* v. *Commissioner of Internal Revenue,* 312 F.2d 311, 317 (9th Cir. 1962)." *United States* v. *Lucienne D'Hotelle,* 558 F.2d 37, 43 (1st Cir. 1977).

personnel that machine component parts purchased separately from basic machines were not tax exempt." The commissioner also points out that Hansen stated at the meeting that "the plaintiff had a subsidiary, Kim-Tech, which could fabricate the machines out-of-state and sell them to the plaintiff," and that the commissioner's representatives stated that the sale of completed machines to the plaintiff by its subsidiary, Kim-Tech, would be tax exempt. Based on this testimony, the commissioner argues that the court could reach "no conclusion other than that the [commissioner's] rulings were conditioned upon facts represented to its personnel which differed from what [the] plaintiff initially proposed to do . . . ." The commissioner argues that "[t]herefore, the decision of the trial court should be set aside . . . ." We disagree.

" 'On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book [§ 4061]. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous.*' (Emphasis added.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980)." *Cookson* v. *Cookson,* 201 Conn. 229, 242–43, 514 A.2d 323 (1986). In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. Id., 243; *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 160, 510 A.2d 440 (1986). On appeal, "we will give the evidence the most favorable reasonable

construction in support of the verdict to which it is entitled." *Gorra Realty, Inc.* v. *Jetmore,* supra. " 'A factual finding may be rejected by this court only if it is "clearly erroneous." ' *Kaplan* v. *Kaplan,* [186 Conn. 387, 392, 441 A.2d 629 (1982)]." *Cookson* v. *Cookson,* supra.

The court's findings and conclusions are supported by the evidence presented before it. Initially, we note that both Karam and O'Neil admitted during their testimony that in all of the written communication between the parties there was absolutely no mention that the exemption was conditioned on the fact that a subsidiary of the plaintiff would fabricate the production lines. Our review of those exhibits confirms that no such condition is included therein. At trial, Hanson testified that after the conference he was under the impression that the plaintiff received a favorable ruling from the commissioner which in his mind did not include the use of Kim-Tech or any other subsidiary. In fact, he recollected that during the conference very little time was spent discussing the possibility of using an out-of-state subsidiary to fabricate the machine. As to the commissioner's response to the possibility of using an out-of-state subsidiary, it was Hanson's impression that it was not required. In fact, "one of the things [Hanson was] trying to come away from the meeting with, was a decision as to whether or not [the plaintiff] had to go through [with that] formalit[y]." Hanson testified that they were never told orally that the exemption was conditional on the use of an out-of-state subsidiary and that the first time that he was aware of that condition was after the audit.

The testimony of Hansell also adds support for the trial court's findings. Hansell testified that in his mind the rulings were not "in any way conditioned upon Kimberly-Clark using Kim-Tech or any other subsidiary to do the [fabrication]." When he left the meeting,

he had "no recollection that it was even a considera-
tion to use Kim-Tech . . . ." Hansell also testified that
he believed that it was Karam who made the statement
that it was not the intention of the Connecticut tax rules
to force construction out of state.[11]

The trial court's rulings also find some support in the
testimony of Karam. Karam testified that although the
principal reason for the meeting of September 4th,
1978, was to discuss the role of the subsidiary, they only
discussed that fact for a few minutes. In response to
the court's statement that it was difficult to believe that
the declaratory ruling was based on an oral condition,
Karam stated that "we weren't articulate enough, and
that's our problem." Karam recognized that "perhaps
[they] should have repeated the statement to [the plain-
tiff], but [that they] didn't."

Although both O'Neil and Karam testified that it was
their "understanding that they [had] agreed that the
[machine] would be fabricated out of state by a subsidi-
ary," the trial court was not required to credit that
testimony. From our review of the entire record, we
conclude that the trial court's findings are amply sup-
ported by the evidence and are not "clearly erroneous,"
and its conclusions based on those findings are "legally
and logically correct." See *Pandolphe's Auto Parts, Inc.*
v. *Manchester,* supra. The trial court was entitled to

---

[11] At trial, Hansell testified as follows: "My recollection was that the bulk
of the meeting centered around the discussion of what the items were that
were on that descriptive document. Ralph [Madden] did a lot of testimony
as to the functions of the various pieces of machinery that make up the
paper machines. I do recall there was some brief discussion about this con-
cept of parts versus whole machines and, as I recall, when that subject came
up Nick [Hansen] introduced this concept of using Kim-Tech, you know,
if we had to, to get around that issue. And I fairly clearly recall, at that
time, I think that it was [Solomon] Karam that made the statement that
it was not the intention of the Connecticut tax rules to force construction
work to take place outside the State of Connecticut, which using Kim-Tech
would clearly do."

find, inter alia, that the plaintiff never orally changed the basic fact that all the machinery would be fabricated by the plaintiff and component parts for such machinery would be purchased from several suppliers, that the commissioner did not make his ruling conditioned on different facts, and that the commissioner's representatives said that it would not be necessary to use an out-of-state subsidiary and it would only hurt Connecticut by forcing construction out of state.[12]

There is no error.

In this opinion the other justices concurred.

---

[12] On the record before us, the trial court was also entitled to find that the commissioner did not make clear in his ruling that if the plaintiff purchased the machine component parts separately from the basic machine, they would not be exempt.