[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Loralyn Upton appeals the decision of the defendant department of social services discontinuing her benefits under the department's Aid to Families with Dependent Children program for a period of fourteen months. The basis of the department's decision was that the plaintiff had received a lump sum settlement of a law suit, which constituted income to her and which rendered her ineligible for welfare benefits for the stated period. The plaintiff's appeal is authorized by General Statutes §§ 17-2b and 4-183.
The essential facts appear to be undisputed. Prior to April 1993, the plaintiff was a recipient of AFDC benefits for herself and one child. In May, 1991, the plaintiff was involved in a motor vehicle accident. In February, 1993, the plaintiff agreed to a settlement of her personal injury claim in the amount of $22,000. Her attorney notified the department that a settlement had been reached, and the department referred the plaintiff's attorney to the bureau of collection services of the department of administrative services regarding claim and CT Page 6703 lien procedures. The plaintiff's attorney contacted that agency and was informed by an employee that the state would claim one half of the net proceeds of the settlement. The plaintiff claims that the employee told her attorney that the amount remaining would not affect the plaintiff's continued eligibility for AFDC assistance. Although the department's decision does not include a specific finding of fact concerning this communication, the text of the decision indicates that the fair hearing officer assumed that it occurred.
During March 1993, the plaintiff received $6650.24, the amount remaining from the settlement after deducting costs, attorney's fees and the state lien.
The plaintiff spent most of the $6650.24 lump sum by the end of the first week of April, 1993. The plaintiff repaid three debts to private parties, paid debts to utility companies and made purchases at various stores.
As of the first week of April, only $78.45 remained of the $6550.24 settlement. On or about April 1, 1993, the plaintiff received from the department a notice of discontinuance of her AFDC benefits. The department stated that the benefits would be discontinued because the lump sum she received was regarded as income and it rendered the plaintiff over the income limit to receive cash assistance. The department then discontinued the benefits effective April 30, 1993.
Following a hearing, the fair hearing officer designated by the defendant commissioner affirmed the decision of the department, finding that relevant department policy and federal regulations required the department to discontinue AFDC assistance to the plaintiff and to establish a period of ineligibility of 13.8 months. The hearing officer found that although the plaintiff received "misinformation regarding [her] eligibility for AFDC, agency policy and federal requirements dictate procedures to be followed in determining eligibility for AFDC with respect to lump sum payments." The hearing officer further found that these procedures are specific and do not allow for prior debts and miscellaneous expenses, however necessary, to be considered in determining the period of ineligibility. CT Page 6704
The sole basis of the plaintiff's appeal is that the department should be equitably estopped from applying the "lump sum" rule in her case. In support of this contention, she claims that a state employee erroneously informed her that her receipt of the settlement funds would not affect her eligibility to continue to receive AFDC benefits. She further claims that she relied on this misinformation to her detriment. At oral argument on this appeal, she claimed, through her attorney, that if she had known that her AFDC benefits would be discontinued for a period of time, she would have budgeted her living expenses and she would not have spent the proceeds all at once. She also claimed that she could have voluntarily withdrawn from the AFDC program until she had spent the money and then reapplied after it was gone.
"[A]s a general rule, estoppel may not be invoked against a public agency in the exercise of its governmental functions." Kimberly-Clark Corp. v. Dubno,204 Conn. 137, 146 (1987), citing Zoning Commission v.Lescynski, 188 Conn. 724, 731 (1982). Nevertheless, an exception to this general rule is made "where the party claiming estoppel would be subjected to a substantial loss if the public agency were permitted to negate the acts of its agents." Kimberly-Clark Corp. v. Dubno,
supra, 147. An estoppel claim is predicated on proof of two essential elements: "`the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . ."' (Citations omitted.) Id., 148, quoting Zoning Commission v.Lescynski, supra. "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Kimberly-Clark Corp. v. Dubno, supra. "It is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citations omitted; internal quotation marks CT Page 6705 omitted.) Id.
Application of the general principles set forth above leads the court ineluctably to conclude that the plaintiff's claim of equitable estoppel in this case may not be sustained. First, the plaintiff introduced no evidence that the state employee who supplied the misinformation intended or even contemplated that the plaintiff should take any specific action in reliance thereon. Secondly, the undisputed evidence in the record establishes that the state worker in question was Stephen J. Bansavich, an employee of the bureau of collection services of the department of administrative services. That department has no authority to determine eligibility for AFDC benefits, and it follows, of course, that Bansavich had no such authority. Finally, there is nothing in the record to demonstrate that the plaintiff exercised due diligence to ascertain the true consequences of accepting the lump sum settlement. Neither she nor her attorney attempted to verify Bansavich's statements by checking with anyone from the department of social services, which does have the exclusive authority of determining the plaintiff's eligibility for benefits. See General Statutes § 17-2 and the regulations thereunder. Furthermore, Bansavich's letters to the plaintiff and her attorney, which long predated the plaintiff's receipt of the money, did not mention the effect of the settlement on her continuing eligibility. Nevertheless, the attorney continued to rely on what she had understood Bansavich to have told her in an earlier telephone conversation. As the attorney stated at the fair hearing:
 and then I asked him, will this have an effect on her State benefits and he said no it won't. So I wrote down State benefits okay no effect. He said he would send me a letter confirming this in writing. Then I got a letter from him dated February 26 stating that fifty percent of the net is what Lori was entitled to receive but it didn't have anything in here about her being discontinued from State or Food Stamps or any type of program. And that was the specific reason I was calling him, was to make sure she was not going to lose her State Assistance. So I relied on what he told me.
CT Page 6706
(Emphasis added.)
In the court's view, due diligence required more than the uncritical acceptance of the state employee's earlier oral statement, especially in view of his repeated failure to verify it in writing.
For all of the reasons set forth above, the court finds that the evidence in the record does not support the plaintiff's claim of equitable estoppel. There is no other claim of error and the court finds none.
The appeal is dismissed.
MALONEY, J.