[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 19, 1995
In this action the plaintiff seeks an injunction to prohibit the defendants, Acme Electro-Plating, Inc. ("Acme"), Robert R. Sherwood, the president of Acme, and Robert A. Sherwood, the vice-president of Acme, from discharging water without a permit and civil penalties pursuant to § 22a-438(a).
Acme is a Connecticut corporation which operates a facility located at 63 Myrtle Avenue in Stamford, Connecticut. On April 20, 1982, a water discharge permit, No. DEP/WPC 135-062, was issued to Acme pursuant to Connecticut General Statutes §22a-430 for the discharge of water, substance or material into the waters of the State of Connecticut. On April 20, 1987 the aforementioned water discharge permit expired.
In January 1988 the plaintiff's predecessor commenced an action against Acme seeking to enjoin Acme from continuing to discharge without a permit and seeking civil penalties. That action was entitled Carothers v. Acme Electro-Plating Inc., No. CV 88 0341749, Superior Court, Judicial District of Hartford/New Britain at Hartford. On March 17, 1989, the court entered a judgment in Carothers pursuant to a stipulation for judgment which provided:
 1. The Defendant shall pay to the State of Connecticut the sum of ELEVEN THOUSAND ($11,000.00) DOLLARS on or before June 1, 1989 . . .
 2. The Defendant will do the following on or before the date of this Judgment:
 (a) Retain a professional engineer registered by the State of Connecticut to perform the activities described in step (b) of this paragraph.
 (b) Submit a complete Application for a water discharge permit to the Commissioner of Environmental Protection.
 3. Nothing herein shall preclude any action by the Commissioner of Environmental Protection, her successor, or designees not inconsistent with this Judgment for any violation by the Defendant of the provisions of Title 22a of the Connecticut General Statutes, as amended, or of any permit issued by her to the Defendant, which is not expressly alleged within the Complaint in this action including but not limited to any illegal activity by the Defendant which may have occurred subsequent to the date of the Complaint in this action. (Emphasis added).
 4. The payment by the Defendant to the Plaintiff of the aforesaid ELEVEN THOUSAND ($11,000.00) DOLLARS is not to be deemed or construed as an acknowledgment or admission by the Defendant of any fault or wrongdoing by it but rather Defendant's election to pay said amount to buy its peace.
On May 24, 1988, Acme filed an application with the plaintiff to discharge pretreated metal finishing wastewaters to the waters of the State. The plaintiff held hearings on numerous days in 1989 and 1990 on Acme's application for a water discharge permit. On July 6, 1992, the plaintiff denied Acme's application for a water discharge permit. Acme appealed from the denial in a case entitled Acme Electro-Plating Inc. v. Keeney, No. CV 92-0515410S, Superior Court, Judicial District of Hartford/New Britain at Hartford, 9 CONN. L. RPTR. 323. That appeal was dismissed by this court, Maloney, J., on June 23, 1993. Judge Maloney reviewed Acme's numerous violations of the State's environmental protection laws as found by the Commissioner and found that Acme had a "long, dismal history of noncompliance with the conditions of its previous permit."
Acme's history of environmental law violations includes: the violation of an order which found Acme had created a source of pollution and required Acme to determine the degree and extent of contamination and to take remedial measures, which resulted in a stipulated judgment entered in 1987 under the terms of which Acme agree to pay $28,000 as a penalty for its noncompliance; Acme bypassed its treatment facilities and discharge untreated wastewater directly into the sewer system for which it was criminally charged and entered guilty pleas and paid fines in the amount of $15,000; and on March 3, 1992 this court, O'Neill, J. found that Acme was in contempt for the violation of two court orders and awarded penalties against Acme for those violations in the amount of $82,500.
This action was instituted against the present defendants on April 26, 1993. The defendants continued to discharge wastewaters into the public waters without a permit even after this action commenced. They did not cease such discharge until the first day of the hearing on the temporary injunction in this case, August 30, 1993. The court, O'Neill, J., entered a temporary injunction on October 5, 1993, which enjoined the defendants from "maintaining a discharge of water, substance or material into the waters of the State without a permit."
At trial the parties entered into a stipulation of facts wherein they stipulated that Robert R. Sherwood and Robert A. Sherwood hire and fire employees of Acme, make decisions regarding services for customers, consult with each other on the operation of Acme, decide if Acme operates and whether it discharges wastewater to the sanitary sewer and that as of August 30, 1993 Acme ceased discharging its wastewaters into the sanitary sever.
The defendants do not oppose the entry of a permanent injunction and they admit that they did discharge wastewaters without a permit in violation of Connecticut General Statutes § 22a-430. The parties disagree as to the period of time for which the plaintiff should be permitted to seek penalties for such violation and the amount of the penalties.
The defendants claim that the plaintiff should be estopped from seeking any penalties against them for the period from March 18, 1989 until April 26, 1993. The former date is the day after the plaintiff and Acme entered into the stipulation set forth above wherein they agreed to pay $11,000 in penalties and submit their application for a discharge permit to the Commissioner, and the later date is the date on which this action was commenced.
The defendants' claim of estoppel is based on the following facts: 1) the stipulation did not contain an injunction; and 2) Acme continued to submit monthly reports to the plaintiff which clearly showed that it was discharging wastewater and the plaintiff took no action to stop such discharge until it filed the complaint in this case.
The claim of estoppel is predicated on the proof of two essential elements: 1) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and 2) the other party must change its position in reliance on these facts, thereby incurring some injury.
Estoppel may be invoked against a public agency only with great caution, only when the action in question has been induced by an agent having authority in such matters, and only when special circumstances make it highly inequitable or oppressive not to estop the agency. Kimberly-Clark Corp. v. Dubro,204 Conn. 137, 527 A.2d 679 (1987); Dornfried v. OctoberTwenty-Four, Inc., 230 Conn. 622, 635 (1994).
Although the defendants have not specifically articulated a claim that they would have ceased their illegal discharge on March 18, 1989 if the plaintiff had indicated it intended to seek penalties therefor, such a claim is implicit in their estoppel argument. In order for this court to consider whether the plaintiff should be estopped from seeking penalties in this case, it must first find that the defendants would have stopped discharging wastewater without a permit if the plaintiff had not misled them into believing that it did not intend to seek civil penalties for such discharge. The court cannot make such a finding. Acme discharged without a permit before it filed the application in 1988, after it filed the application and was awaiting hearing, after the hearing officer issued her proposed decision denying Acme's application on March 17, 1992, after the Commissioner denied the permit in July 1992, after the Commissioner filed this action in April 1993, and after the Commissioner filed the application for temporary injunction in this action. Acme did not cease its illegal discharge until the first day of the hearing on the temporary injunction before Judge O'Neill. Based on the foregoing history, this court concludes that nothing that the plaintiff said or did could have caused Acme to cease its illegal discharge. Acme stopped its illegal conduct only when a court order enjoining such conduct was imminent.
By discharging wastewater without a permit the defendants gained an economic benefit. During the period from March 18, 1989 through August 30, 1993, Acme discharged 1,000 to 8,000 gallons of wastewater per day. The cost of the proper disposal of that wastewater was $1.50 per gallon.
Section 22a-438(a) of the Connecticut General Statutes provides:
 Any person who . . . violates any provision of this chapter . . . shall be assessed a civil penalty not to exceed twenty-five thousand dollars, to be fixed by the court, for each offense. Each violation shall be a separate and distinct offense and, in case of a continuing violation, each day's continuance thereof shall be deemed to be a separate and distinct offense . . . In determining the amount of any penalty assessed under this subsection, the court may consider the nature, circumstances, extent and gravity of the violation, the person['s] . . . prior history of violations, the economic benefit resulting to the person . . . from the violation, and such other factors deemed appropriate by the court. The court shall consider the status of a person . . . as a persistent violator.
In Carothers v. Capozziello, 215 Conn. 82, 103, 104,574 A.2d 1268 (1990), the Court enumerated the following factors to be considered by the court in imposing penalties for violations of environmental protection laws:
 (1) the size of the business involved; (2) the effect of the penalty or injunctive relief on its ability to continue operation; (3) the gravity of the violation; (4) the good faith efforts made by the business to comply with applicable statutory requirements; (5) any economic benefit gained by the violations; (6) deterrence of future violations; and (7) the fair and equitable treatment of the regulated community. See 33 U.S.C. § 1319(d) (Cum. Sup. 1989).
The cost of proper wastewater disposal is evidence as to the amount Acme saved by not using proper methods to dispose of the wastewater. Acme failed to submit any evidence as to its size or the effect of any penalty on its ability to continue operation. The only information the court has on that subject is that the prior penalties described above have, apparently, not prevented Acme from continuing its operation.
Although the court has held that the plaintiff is not estopped from seeking a penalty for Acme's illegal wastewater disposal during the period from March 18, 1989 through August 30, 1993, the court finds that the imposition of any substantial penalty on the defendants for the period from March 18, 1989 through July 6, 1992, the date on which the plaintiff denied the permit application, would not be equitable. The conduct of the plaintiff or its employees could well have caused the defendants to believe that its continued illegal discharge would be tolerated, at least until Acme obtained approval or denial of its permit application.
During the time period from July 6, 1992 until April 26, 1993 the defendants continued to discharge wastewater without a permit notwithstanding their knowledge that the plaintiff had denied Acme a permit to do so. Their failure to appreciate the penalties which could be imposed for the illegal discharge during this period was unreasonable.
After April 26, 1993, the date on which this suit was commenced, the continued discharge of wastewater without a permit can only be described as a blatant disregard of the law by a defendant with an "dismal" record of prior violations. That discharge continued until August 30, 1993.
Alter considering the factors enumerated in § 22a-438(a) and Capozziello, the court imposes the following penalties on the defendants:
For the period from March 18, 1989 until July 6, 1992, $5,000;
For the period from July 7, 1992 until April 26, 1993, $50,000; and
For the period from April 27, 1993 until August 30, 1993, $100,000.
The total penalties of $155,000 are imposed jointly and severally on the defendant Acme Electro-Plating, Inc., and on Robert R. Sherwood, and Robert A. Sherwood, since they have stipulated that they directed and controlled the activities of Acme. The corporate form does not shield an officer or agent of a corporation from personal liability for his participation in the commission of a tort. Scribner v. O'Brien, 169 Conn. 389, 404,363 A.2d 160 (1975). Therefore, it should not shield the officers or agents of a corporation from liability for the violation of a statute or regulation.
By order dated January 19, 1996, this court has issued an injunction against the defendants.
AURIGEMMA, J.