## COMMISSIONER OF ADMINISTRATIVE SERVICES *v.* KAREN JENKINS, EXECUTRIX (ESTATE OF CATHERINE MCNALLY)

| Superior Court | Judicial District of Hartford | File No. CV00-0599367S |

Memorandum filed January 7, 2002

*Robert A. Nagy*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the plaintiff.

*Timothy H. Wentworth*, for the defendant.

I

## INTRODUCTION

HON. RICHARD M. RITTENBAND, JUDGE TRIAL REFEREE. This is an action by the state of Connecticut, acting through the plaintiff, the commissioner of administrative services, on the denial of its creditor's claim presented to the defendant, Karen Jenkins, for reimbursement of the costs of Catherine McNally's care at Connecticut Valley Hospital (hospital). The claim was presented to the defendant in her capacity as executrix of the estate of Catherine McNally (decedent).

The decedent was a patient at the hospital between April 29 and June 30, 1996. The balance claimed by the plaintiff for her care is $24,140.51. This amount is supported by an affidavit of debt of Donna Wadhams, reimbursement analyst for the plaintiff, dated September 24, 2001. The defendant has not disputed the amount claimed by the plaintiff.

The decedent died on July 28, 1999, and the defendant, as indicated earlier, is the executrix of her estate, having been appointed by the Probate Court for the district of Colchester.

The allegations of the complaint are not disputed by the defendant, except that the defendant has offered a special defense. The gravamen of this special defense is that: "At the time of her admission to [the hospital, the decedent] inquired as to the cost of care and payment therefor. [The decedent] was informed by the plaintiff's intake personnel, in the presence of others, that the cost of her care would be entirely covered by her medical insurance. . . . [The decedent] made said inquiry because she would not have admitted herself in the event that she had to pay for her stay out of her own funds. The plaintiff is therefore properly estopped from the collection of said funds."

## II

### STANDARD OF REVIEW

"A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984); *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11, 459 A.2d 115 (1983).

A party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact. *Dougherty* v. *Graham*, 161 Conn. 248, 250, 287 A.2d 382 (1971). "To satisfy [this] burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Plouffe* v. *New York, N.H. & H.R. Co.*, 160 Conn. 482, 488, 280 A.2d 359 (1971). "[T]he party opposing such a motion must provide an *evidentiary* foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis added.)

*Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994); see also *Miles* v. *Foley*, 253 Conn. 381, 386, 752 A.2d 503 (2000). "The test that has been stated is: 'In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.' . . . *Cummings & Lockwood* v. *Gray*, 26 Conn. App. 293, 296–97, 600 A.2d 1040 (1991)." *Dawson* v. *Kuehn*, 47 Conn. Sup. 241, 244, 785 A.2d 1226 (2001).

## III

## ISSUES

The only impediment to the plaintiff obtaining summary judgment is the defendant's special defense of estoppel. First, it should be noted that the defendant has not filed any affidavit or any documents in opposition to the motion for summary judgment. See Practice Book § 17-46. Further, there has been no request by the defendant for a continuance to permit affidavits to be obtained or discovery to be had. See Practice Book § 17-47.

The elements of estoppel against a government agency are set forth in *In re Michaela Lee R.*, 253 Conn. 570, 604, 756 A.2d 214 (2000): " 'Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means

of acquiring knowledge. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987). Finally, a claim for promissory estoppel will not lie against the state unless the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. Id.' . . . *Chotkowski* v. *State*, 240 Conn. 246, 268–69, 690 A.2d 368 (1997); see also *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 353, 365 A.2d 1093 (1976)."

The court finds the special defense to be without merit for the following reasons.

First, the defendant has admitted that she did not know the names of the individuals who allegedly made such a statement to the decedent until she was informed of the same by the plaintiff by its response to the defendant's motion for disclosure and production dated December 14, 2001. The defendant has not interviewed either of these two individuals. The reason that their testimony is essential is because the alleged statement made to the decedent, who then repeated it to her son, who then repeated it to the defendant, who is the decedent's daughter, is at least double hearsay and not admissible in court. As stated in *In re Michaela Lee R.*, supra, 253 Conn. 604, estoppel may be invoked against a public agency "only when the action in question has been induced by an agent having authority in such matters . . . ." (Internal quotation marks omitted.) The defendant cannot prove statements were made by someone with authority nor that the decedent relied on them to her detriment. The only statement that she

relied on would have been a statement of the decedent, which is also hearsay.

Additionally, the special defense was filed on August 11, 2000, yet the defendant made no effort to acquire the names of the individuals who allegedly made such statement until she filed a motion for disclosure and production on November 20, 2001, approximately sixteen months after the special defense was filed. Whether the defendant will be able to interview the aforementioned two individuals and what they will say is strictly speculative and does not comply with the ruling in *Miles* v. *Foley,* supra, 253 Conn. 386, that "the party opposing such a motion must provide an *evidentiary* foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis added; internal quotation marks omitted.)

Second, the affidavit accompanying the motion for summary judgment states that on May 3, 1996, which is five days after the decedent was admitted to the hospital for alcohol detoxification, she received from a physician at the hospital a written advisory that she no longer required skilled nursing care and that, from that day forward, she was liable for the cost of her care at the hospital. This is contained in exhibit 11 of the affidavit. She *elected,* therefore, to stay in the hospital for another forty-three days.

Third, the defendant cannot establish any inequity in paying the state's claim. There is no dispute that the decedent actually received the care for which payment is claimed on the dates alleged. Payment thereof does not in any way disadvantage the decedent. It may be a disadvantage to the heirs of the decedent, but Connecticut does not recognize an inherent right to inherit. See *Watrous* v. *Connally,* 141 Conn. 257, 264–65, 105 A.2d 654 (1954). Further, under the rules of administration

or settlement of an estate, the beneficiaries are creditors, tax authorities, heirs, legatees and devisees. Creditors are always to be paid before the beneficiaries of the estate.

Additionally, it is well settled law that he who claims equity (equitable estoppel), must do equity. In her application to be named executrix of the decedent's estate, the defendant stated that the decedent *did not* ever receive aid or care from the state of Connecticut. This statement, of course, was untrue, and it is hard to believe that the defendant did not know about her mother's stay at the hospital. Defense counsel makes much of the argument that no effort was made to collect this money before the decedent died and that, somehow, in order to make sure that she was not inequitably treated, the effort to obtain payment of the bill was delayed until after she died. This is contradicted by the investigator's notes, exhibit 4, which show that on June 4, 1999 (the decedent died on July 28, 1999) the investigator for the plaintiff received a call from James P. McNally, Jr., the son of the decedent. He claimed that his mother could not pay this balance of what was at that time $17,684.97, because she had no assets to pay the bill. This was untrue. Also, the failure to list the state of Connecticut as a creditor for the plaintiff, having given care to the decedent, could be construed as an effort to avoid having the state make a claim to the defendant. This court, therefore, concludes that there is no inequity to the defendant in being required to pay the claim of the state of Connecticut made in the present motion.

Fourth, and finally, exhibit 10 to the affidavit of Wadhams is a form signed by the decedent indicating that she has medicare and insurance from Gerber Company, her employer or former employer. She should have known whether the Gerber Company insurance covered this type of care. Also, she was asked to list her various assets and income, which should have indicated to her

that the state was inquiring about these assets and income to determine whether she was financially able to pay the bills incurred, despite insurance and medicare. Then, according to exhibit 11 attached to the affidavit, she was given notice on May 3, 1996, that she was financially liable for all costs under the care that she was receiving commencing May 4, 1996. As stated in *Kimberly-Clark Corp.* v. *Dubno*, supra, 204 Conn. 148: "[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) The decedent was put on notice that there was at least a question as to whether her insurance would cover her care. By exhibit 10, she should have known that the information would not be required by the state if it were relying solely on private insurance and medicare. Exhibit 11, in which she was advised that she was liable for the cost of her care at the hospital, would have further put her on notice that she might not have insurance coverage to the extent she needed it. The court finds that she did not exercise due diligence to ascertain the truth, and that she did have a convenient means of acquiring knowledge of the truth by checking her insurance policy with Gerber Company.

There are no disputed evidentiary issues of fact and, therefore, the plaintiff is entitled to judgment as a matter of law.

## IV

## CONCLUSION

For the aforementioned reasons, the plaintiff's motion for summary judgment is granted in the amount of $24,140.51.