## WILLIAM RAVEIS REAL ESTATE, INC. *v.* COMMISSIONER OF REVENUE SERVICES

Superior Court          Tax Session          File No. 387235S

Memorandum filed January 5, 1995

*Cohen & Wolf,* for the plaintiff.

*Jonathon L. Ensign,* assistant attorney general, with whom was *Richard Blumenthal,* attorney general, for the defendant.

HON. DAVID M. SHEA, STATE TRIAL REFEREE. The plaintiff, William Raveis Real Estate, Inc., has appealed from an assessment by the defendant, the department of revenue services (department), of use

1

taxes under General Statutes § 12-411 on some of its purchases of goods and services from Connecticut vendors, including those having the requisite taxable nexus with this state, during the audit period January 1, 1984, to June 30, 1989. The department concluded that no sales taxes on the purchases that form the basis of the assessment had been collected by the vendors for remittance to the state and that those taxes had not otherwise been paid to the state. The sales tax statute, General Statutes § 12-408 (1), requires vendors of items subject to the sales tax to pay that tax to the state, and § 12-408 (2) provides that vendors shall collect the tax from the purchaser as reimbursement. The use tax statute, § 12-411 (2), imposes liability for the tax on "[e]very person . . . using in this state services or tangible personal property purchased from a retailer . . . ."

The plaintiff is engaged in business in Connecticut as a real estate broker and has its principal office in the town of Shelton. It maintains approximately forty other offices located in various towns in this state. During the audit period it purchased goods and services related to the conduct of its business from Connecticut vendors who collected no taxes on the sales. During this period it also purchased similar goods and services from out-of-state vendors and paid no use taxes on those purchases.

The department audit resulted in a use tax deficiency assessment against the plaintiff, which it protested. After a hearing, the department concluded that the deficiency assessment was proper. The plaintiff has appealed from that decision, challenging only the use taxes imposed on its purchases from Connecticut vendors during the audit period, on which no sales taxes have been collected.

The plaintiff raises three issues in this appeal: (1) whether the use tax imposed by § 12-411 can be applied

to purchases of goods and services from vendors in this state who have failed to collect the sales tax under § 12-408 (2), when the purchaser has done nothing that contributed to such failure; (2) whether the department is estopped by the acquiescence of its officials, prior to the current policy of enforcement of the use tax in such circumstances, in the widespread view of the tax profession that the use tax cannot be applied to a purchase that is subject to the sales tax; and (3) whether, even if the deficiency assessment is upheld as lawful, the court may and should invoke equitable principles to reduce the amount of the plaintiff's total obligation, including the penalty and the interest. At the hearing on this appeal, the plaintiff moved to bifurcate the first two issues from the third and the court granted the motion, which was unopposed. Accordingly, this opinion deals with only the first and second issues, which are resolved against the plaintiff. An additional hearing will be necessary to decide the third issue.

The plaintiff claims that its purchases from vendors in this state upon which the use tax has been assessed are exempt therefrom by virtue of the plain language of General Statutes § 12-413 (1).[1] The plaintiff maintains that this exemption is applicable whenever a sales tax is imposed by § 12-411 (1), regardless of whether it has been paid. In support of its position, it has presented an excerpt from a treatise authored by James L. MacNeil and Arthur N. Haut, which declares unequivocally that "[s]ales subject to the sales tax are exempt from the use tax." It has also presented the testimony of a certified public accountant, who advised the plaintiff that, during the audit period, the general understanding of the accounting profession in this state was that, if a

---

[1] General Statutes § 12-413 (1) provides: "Where sales tax applicable. The storage, acceptance, consumption or other use in this state of services or property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, is exempted from the use tax."

sale was subject to the sales tax, no use tax could be imposed. Another accountant, presented as an expert witness, was of the same opinion, except that he indicated that he and some other members of that profession had learned in 1987 that the department, in a 1986 audit of a construction company, was asserting a different position with respect to the mutual exclusivity of the sales and use taxes. A similar opinion was given by an attorney who specializes in taxation, including the Connecticut sales and use taxes. The plaintiff also relies on *White Oak Corp.* v. *Dept. of Revenue Services*, 198 Conn. 413, 419, 503 A.2d 582 (1986), for the proposition that "[t]he difference between a sales and a use tax is that *generally* a sales tax is imposed on items acquired within the state and a use tax is imposed on items acquired outside the state for use within this state." (Emphasis added.)

The decision of the Supreme Court in *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, 211 Conn. 246, 558 A.2d 993 (1989) *(Hartford Parkview)*, released approximately one month before the end of the audit period involved in the present case, has dispelled the assumption that the sales tax and the use tax are mutually exclusive. Relying on the principle that exemptions in a tax statute are to be construed against the taxpayer, the majority opinion noted that the text of § 12-411 (1), which imposes the use tax, is equally applicable to in-state users of tangible property or services, whether purchased from retailers in this state or another state. Id., 255. The majority followed the interpretation that several other state courts had adopted in construing statutes with language similar to the exemption provision of § 12-413 (1), that the use tax exemption was "designed to avoid double taxation for transactions involving goods purchased for resale, which will *subsequently* become subject to the sales tax." (Emphasis in original.) Id.; *J. A. Tobin Construction Co.* v. *Weed*, 158 Colo. 430, 434–

35, 407 P.2d 350 (1965); *Herman M. Brown Co.* v. *Johnson*, 248 Iowa 1143, 1155, 82 N.W.2d 134 (1957); contra *Sullivan* v. *United States*, 395 U.S. 169, 172, 89 S. Ct. 1648, 23 L. Ed. 2d 182 (1969); *Capitol Building Co.* v. *Langton*, 101 R.I. 131, 135–36, 221 A.2d 99 (1966).

The plaintiff recognizes that this court is bound by the interpretation of § 12-413 (1) adopted in *Hartford Parkview*, but claims that the decision was limited to the circumstances of that case and that the only principle of general application to be gleaned from the opinion is the statement that "the use tax may apply to purchases from Connecticut vendors in the proper circumstances." *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, supra, 211 Conn. 255. It argues that the present case can be distinguished on the ground that in *Hartford Parkview* the taxpayer maintained that its hotel furnishings and equipment had been purchased for resale to its hotel guests and were subject to neither the sales tax nor the use tax. "This conduct estops the taxpayer from asserting that it had no role in the vendor's likely failure to have paid a sales tax." Id., 256. The plaintiff in the present case claims that it made no representation and did not perform any other act that would have induced its vendors not to collect the sales tax on its in-state purchases and that there is no evidence to the contrary.

This court concludes, however, that the plaintiff's analysis of *Hartford Parkview* is not supported by the text of that opinion. There is nothing equivocal about the majority's endorsement of the interpretation adopted by other state courts of statutory language similar to § 12-413 (1), that its purpose was simply to avoid double taxation of goods purchased for resale. "That construction is entirely persuasive." Id., 255. The reference in the opinion to the conduct of the taxpayer that may have resulted in the failure of the vendors to collect a sales tax on the in-state purchases is confined

to the discussion of the taxpayer's unsuccessful claim that the vendors might have remitted the tax to the state, even though it had not been collected from the purchaser, thus raising the possibility of double taxation. This court is convinced that the interpretation of § 12-413 (1) adopted in *Hartford Parkview* is equally applicable to the present case, despite the absence of any indication that conduct of the plaintiff contributed to the failure of the retailers to collect the sales tax on the purchases involved.

The plaintiff claims that the department should be estopped from collecting a use tax on the purchases from Connecticut vendors on two grounds: (1) the acquiescence by the department prior to *Hartford Parkview* in the opinion, generally held by accountants, that, when the sales tax is applicable, no use tax may be imposed; and (2) a ruling by the department in response to an inquiry by a tax attorney made on behalf of another corporation owned by the plaintiff's stockholders, which, the plaintiff claims, indicates that the department approved that interpretation.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 731, 453 A.2d 1144 (1982). "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987).

At trial, the plaintiff presented its accountant, who testified that, during the audit period, 1984–89, he believed that the use tax could not be imposed on purchases from Connecticut vendors because those vendors were subject to the sales tax. His opinion was shared by other accountants whom he had met at seminars on Connecticut taxes, some of which were also attended by department personnel. He referred to an excerpt from the sales and use tax manual used by department auditors, which sets forth the text of § 12-413 (1). He referred to the MacNeil-Haut treatise, which declares that sales subject to the sales tax are exempt from the use tax and also to the foreword to the treatise, written in 1970, by former tax commissioner John L. Sullivan, endorsing the book as a "valuable guide for taxpayers and tax practitioners in preparing returns" and stating that it had been reviewed by the department and "incorporated many of the suggestions made by this office." J. MacNeil & A. Haut, supra.

None of the evidence presented, however, indicates that the department took any affirmative action to foster the widespread opinion that the use tax could never be applied to in-state purchases. Such a view may have arisen among accountants and other tax professionals because it is supported by the plain language of the exemption statute, § 12-413 (a), absent any judicial gloss, and because, prior to *Hartford Parkview*, the department had not enforced the collection of use taxes against purchasers who had paid no sales tax to their Connecticut vendors. Such inaction, however, provides no basis for support of a claim of equitable estoppel. "An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past. . . . Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of

mistaken action or lack of action on the part of public officials." (Citations omitted.) *National Labor Relations Board* v. *Baltimore Transit Co.*, 140 F.2d 51, 55 (4th Cir. 1944). "The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." *Automobile Club* v. *Commissioner of Internal Revenue*, 353 U.S. 180, 183, 77 S. Ct. 707, 1 L. Ed. 2d 746 (1957). With respect to the quarter-century old foreword to the MacNeil-Haut treatise, nothing in that laudation can reasonably be construed as an endorsement by the department of every statement of the law made by the authors, nor would it qualify as "something calculated or intended to induce another party to believe that certain facts exist and to act on that belief . . . ." *Zoning Commission* v. *Lescynski*, supra, 188 Conn. 731. It was nothing more than a gratuitous blurb.

The plaintiff also advances a more orthodox ground for invoking equitable estoppel, the response of the director of the legal division of the department to an inquiry of a tax attorney concerning the applicability of the use tax to purchases of another corporation from an out-of-state vendor with a sufficient Connecticut nexus to make the sales tax applicable. In *Kimberly-Clark Corp.* v. *Dubno*, supra, 204 Conn. 137, it was held that General Statutes § 4-176 of the Uniform Administrative Procedure Act authorizes the department to issue declaratory rulings in response to taxpayer inquiries and that a taxpayer may justifiably rely on them. In that case the court concluded that all the elements of equitable estoppel had been proved and that the department was bound by the ruling that it had made exempting certain items of machinery from sales or use taxes. Id., 151.

On May 21, 1986, the William Raveis Mortgage Company, which is owned by the same stockholders as the plaintiff corporation, employed an attorney who

specializes in taxation to advise it concerning several questions its accountants had raised during an internal audit of the company with respect to its possible liability for Connecticut sales and use taxes. The attorney decided to obtain a ruling on the issues involved by submitting his inquiries in a letter to the department. The only inquiry pertinent to the present case was the following: "C. *Fees Paid For Computer Time Sharing.* The mortgage company uses for a fee on a time sharing basis, computer time and software owned by a computer company headquartered in Georgia. The computer company has salesmen in Connecticut and it sends service personnel to Connecticut to service the computer operations in Connecticut and to train the mortgage company's personnel on the use of the computer. The computer service is utilized by the mortgage company in Connecticut. The computer company does not charge the mortgage company a Connecticut sales tax on the fees paid for the computer service. Is the mortgage company liable for a Connecticut use tax on fees paid for computer services?" In a letter signed by the director of its legal division, the department gave the following response to that question: "All are in agreement that this service is subject to the sales tax."

The department's response does not explicitly answer the question posed concerning the liability of the mortgage company for the use tax, but simply asserts that the fees paid to the computer company in Georgia are subject to the Connecticut sales tax. The attorney who had submitted the inquiry, nevertheless, inferred that the department had ruled that no use tax could be imposed on his client in the transaction described. He assumed that the department shared the widespread view that no use tax could be applied to a sale that is subject to the sales tax, although the department at some time in the year of the inquiry took a contrary position. He advised the accountants

conducting the internal audit of the mortgage company that the department had determined that the payments for computer services were subject to the sales tax and that "[i]n light of the statements made in [his] letter, it would appear that this obligation is the obligation of the computer company, not Raveis mortgage."

The department maintains that the plaintiff could not reasonably have relied on its letter ruling because the question posed concerning the liability of the mortgage company for the use tax was never answered and because the inquiry was not made by the plaintiff but by a different corporation. The court agrees.

It is elementary that the plaintiff bears the burden of establishing the facts necessary to support its claim of estoppel. The court is not persuaded that the response of the department that the transaction described in the inquiry was subject to the sales tax can reasonably be relied upon as assurance that no use tax can be applied when no sales tax has been paid. There are other possible explanations for the failure of the department to answer the question of liability for the use tax directly. The author of the department letter ruling may not have understood the question fully or may not have been willing to commit himself on a subject that may have been under consideration by the department. There is no evidence, other than his ambiguous response, that he shared the belief that applicability of the sales tax precluded liability for the use tax when no sales tax has been paid. "[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 54, 184 A.2d 797 (1962). The plaintiff has not shown that due diligence was exercised in the present case, because there is no evidence that any attempt was made to clarify the unresponsive

answer given by the department to the inquiry concerning liability for the use tax.

The department also contends that its letter ruling could be relied upon only by the corporation in whose behalf it was requested, the William Raveis Mortgage Company. The federal courts have held that taxpayers "are not entitled to rely upon unpublished private rulings which were not issued specifically to them . . . ." *Hanover Bank* v. *Commissioner of Internal Revenue*, 369 U.S. 672, 686, 82 S. Ct. 1080, 8 L. Ed. 2d 187 (1962); *Helvering* v. *New York Trust Co.*, 292 U.S. 455, 467–68, 54 S. Ct. 806, 78 L. Ed. 1361 (1934); see *Rowan Cos.* v. *United States*, 452 U.S. 247, 261 n.17, 101 S. Ct. 2288, 68 L. Ed. 2d 814 (1981). Although the court is not aware of any like precedent in this state, such a limitation on the effect of private rulings would be consistent with the principle that "estoppel against a public agency is limited and may be invoked: (1) only with great caution . . . ." *Kimberly-Clark Corp.* v. *Dubno*, supra, 204 Conn. 148. It serves the purpose of minimizing the fallout from an erroneous ruling and thus encourages the department to respond to informal taxpayer inquiries without exhaustive study.

The plaintiff contends that it has a sufficiently close relationship with the William Raveis Mortgage Company to justify its reliance on the ruling given at the request of that corporation. The evidence indicates that, in addition to the similarity of their names, both corporations are owned by the same stockholders, have some of the same officers, and used the same accountants, who advised both of them in reliance on the same department ruling. There is, however, no legal tie that would justify ignoring their separate corporate identities. The circumstances relied on by the plaintiff are insufficient to warrant piercing the corporate veil. A taxpayer cannot create the corporate shield to advance

his interests, but demand that it be disregarded when it proves disadvantageous.

This resolution of the first two issues against the plaintiff makes it necessary to consider the third issue of whether any reduction in the total amount of the obligation, including the penalty and the interest, is warranted on equitable grounds pursuant to General Statutes § 12-422. The parties will be notified when the hearing on that issue has been scheduled. A final judgment will be rendered after that hearing.