*300
 
 HON. DAVID M. SHEA, JUDGE TRIAL REFEREE.
 

 In this bifurcated trial of the plaintiffs appeal from an assessment of use taxes made by the department of revenue services (department) for the period January 1, 1984, to June 30, 1989, this court, in a memorandum of decision filed on January 5,1995, resolved the issues of taxability of the transactions involved (first count) and estoppel by conduct of department officials (second count) in favor of the defendant, the commissioner of revenue services (commissioner).
 
 William Raveis Real Estate, Inc.
 
 v.
 
 Commissioner of Revenue Services,
 
 44 Conn. Sup. 1, 665 A.2d 1374 (1995). The remaining issue of whether the plaintiff is entitled to any relief with respect to the amount of the delinquent taxes, the interest thereon, or the penalty that the department has included in the assessment, as claimed in the third count of the complaint, is the subject of this memorandum. The court has concluded that, while there is no basis for reducing the amount of the taxes imposed or the interest thereon, equitable considerations require elimination of the statutory penalty that the department has imposed with respect to the use taxes due on the plaintiffs purchases from in-state vendors, which form part of the assessment.
 

 The assessment imposed by the department for unpaid use taxes on the plaintiffs in-state purchases during the audit period is $113,691.15, to which a statutory penalty of $11,369.12 has been added. Interest through November 30, 1994, has increased the assessment by $151,973.11 to a total of $277,033.38. Similarly, the department has made an assessment of $40,110.22 plus a penalty of $4011.01 with respect to the failure of the plaintiff to pay use taxes on its purchases from out-of-state vendors.
 

 This appeal was taken pursuant to General Statutes § 12-422, which provides that the “court may grant such relief as may be equitable.” That provision has been
 
 *301
 
 construed to require a trial de novo in a tax appeal, unlike an appeal pursuant to our Uniform Administrative Procedure Act in which the court is bound by the findings and conclusions of the agency that are reasonably supported by the record.
 
 American Totalisator Co.
 
 v.
 
 Dubno,
 
 210 Conn. 401, 411-13, 555 A.2d 414 (1989);
 
 Schlumberger Technology Corp.
 
 v.
 
 Dubno,
 
 202 Conn. 412, 421, 521 A.2d 569 (1987). The plaintiff, therefore, has the right to a fresh determination of the issues without deference to the decision made by the department.
 

 I
 

 PENALTY
 

 When a taxpayer has failed to file a use tax return, General Statutes § 12-416 requires the tax commissioner to estimate the amount of the tax due and to add thereto a penalty, which, during the audit period, was 10 percent of such tax. The tax commissioner is authorized by General Statutes § 12-419 to waive “all or any part of the penalties . . . when it is proven to the satisfaction of the commissioner that failure to pay any tax was due to reasonable cause and was not intentional or due to neglect.” The commissioner’s grant of such a waiver, however, is subject to review by the tax review committee established pursuant to General Statutes § 12-3a, of which he is one of three members. When no waiver has been granted, as in the present case, that committee has no authority to review the refusal to grant a waiver.
 

 Subsection (c) of § 12-3a requires the tax review committee “[to] adopt regulations . . . establishing guidelines for the waiver of any tax penalty in excess of one hundred dollars.” The guidelines adopted pursuant to § 12-3a are in the form of examples of situations that would qualify for a waiver under the statutory standard of failure to pay taxes “due to reasonable cause” and
 
 *302
 
 “not intentional or due to neglect.” The examples given are merely illustrative and do not purport to be exclusive.
 

 The plaintiff claims that one of the examples listed in the state agency regulations under the caption, “ [¶] ailure to pay tax on time due to reasonable cause,” describes circumstances quite similar to those in the present case. “No tax return was filed . . . but the taxpayer contacted a competent tax advisor, to whom the taxpayer furnished all necessary information but who incorrectly advised the taxpayer that a tax return was not required . . . and the taxpayer exercised ordinary business care and prudence in determining whether to seek further advice.” Regs., Conn. State Agencies § 12-3a-l (b) (4). That example is based on the decision in
 
 Duval
 
 v.
 
 Brown,
 
 31 Conn. Sup. 373, 333 A.2d 63 (1974), in which the taxpayer’s reliance on the advice of her accountant in failing to file sales tax returns for twenty-one years was deemed to warrant the equitable relief of abatement of all but three years of delinquent taxes. Our Supreme Court cited
 
 Duval
 
 with approval in upholding the trial court’s disallowance of the statutory penalty in
 
 H. B. Sanson, Inc.
 
 v.
 
 Tax Commissioner,
 
 187 Conn. 581, 588, 447 A.2d 12 (1982). “Reasonable reliance upon an accountant’s advice may be considered as a factor, although not necessarily a conclusive one, when determining whether the plaintiff disregarded the law either negligently or intentionally.” Id.
 

 The department has advanced several arguments against abating the penalty it has imposed. First, it contends that the plaintiffs failure to file use tax returns with respect to its purchases from out-of-state vendors, for which no excuse has been offered, taints its claim for equitable relief in regard to the penalty relating to its in-state purchases by virtue of the maxim that “he who comes into equity must come with clean hands.”
 
 *303
 
 Second, the department maintains that there is no evidence that the plaintiff furnished its accountants with “ail the necessary information” regarding the in-state purchases, that the accountants advised it not to file tax returns relating to such purchases, or that it was justified in not seeking further advice, as § 12-3a-l (b) (4) requires.
 

 None of these contentions has any merit. The “clean hands” principle is not a scarlet letter that must be worn to the grave by the sinner as a barrier to recognition of any of his legal rights, even with respect to transactions wholly unrelated to his offense. The maxim applies only to the particular transaction under consideration.
 
 Lyman
 
 v.
 
 Lyman,
 
 90 Conn. 399, 406, 97 A. 312 (1916);
 
 Yale Gas Stove Co.
 
 v.
 
 Wilcox,
 
 64 Conn. 101, 128, 29 A. 303 (1894). Undoubtedly the plaintiff was at least negligent in failing to pay use taxes on its out-of-state purchases during the audit period. Its accountant testified that he advised the plaintiff that use taxes were due on out-of-state purchases, but not on in-state purchases. He also testified that he advised the plaintiffs chief financial officer that he need not be concerned about the use tax where a Connecticut vendor was involved, thus plainly implying that such a concern would be appropriate when dealing with an out-of-state vendor. The penalty prescribed by statute has properly been imposed with respect to the inexcusable failure of the plaintiff to file returns and to pay use taxes on those purchases. The department claims that the filing of such returns when due might have triggered an earlier state audit that might have brought to light the plaintiffs liability for use taxes on its in-state purchases and that this nexus is sufficient to warrant denial of any relief to the plaintiff. An earlier discovery of the failure of the plaintiff to pay use taxes on its in-state purchases was unlikely, however, because there is no reliable evidence to indicate that the department was widely
 
 *304
 
 enforcing the collection of use taxes on in-state purchases on which no sales tax had been paid until after the decision in
 
 Hartford Parkview Associates Ltd. Partnership
 
 v.
 
 Groppo,
 
 211 Conn. 246, 558 A.2d 993 (1989), which upheld its position that use taxes were due from the purchasers in such situations. The court concludes that the relationship between the defaults relating to the out-of-state and in-state purchases is too tenuous to allow the plaintiffs inexcusable neglect concerning the former to influence the consideration of its claim that a penalty was improperly imposed with respect to the latter.
 

 With respect to the claim of insufficient evidence that the plaintiff had furnished its accountant with the necessary information regarding its in-state purchases, the accountant testified that he had conducted an internal audit of the mortgage company in 1986 and had found a significant number of purchases from an out-of-state computer seller that had a nexus with Connecticut and that some purchases of hardware were also involved. He also knew that a similar problem existed in the real estate company. His concern was whether such sales were subject to the Connecticut sales tax. It was this discovery that prompted him to consult a tax attorney, who obtained a ruling from the department on that question. The ruling, which was obtained on behalf of the mortgage company, was interpreted by the attorney as well as by the accountant to mean that no use tax could be imposed on either the mortgage company or the plaintiff real estate company for instate purchases even though no sales tax had been collected thereon. The only distinction between these circumstances and the example of “reasonable cause” given in state agency regulation § 12-3a-l (b) (4) is that the ruling was not sought by the plaintiff but by its sister corporation, the mortgage company. Although the absence of a request for a ruling on behalf of the
 
 *305
 
 plaintiff was viewed as critical with respect to the issue of estoppel (second count), it is of little significance in determining whether the plaintiffs default was “due to reasonable cause” and “not intentional or due to neglect.”
 

 The court concludes that the plaintiff has sufficiently proved that its failure to pay use taxes on its in-state purchases during the audit period was due to reasonable cause and was not intentional or due to neglect. Accordingly, the plaintiff is entitled to an abatement of the penalty that has been imposed for failure to pay use taxes on its in-state purchases.
 

 II
 

 ABATEMENT OF DELINQUENT TAXES
 

 The plaintiff claims that the court should exercise its equitable powers to reduce the amount of the assessment, $113,691.15, for delinquent taxes related to the in-state purchases that accrued during the five and one-half year audit period, January 1, 1984, to June 30,1989. In
 
 Duval
 
 v.
 
 Brown,
 
 supra, 31 Conn. Sup. 373, the trial court granted such relief under circumstances where the taxpayer had relied on an accountant to prepare her tax returns who did not realize that part of the gross receipts from the taxpayer’s catering business was subject to the sales tax. The court effectuated the reduction by limiting the audit period to three years instead of the six years used by the commissioner, who had argued that his decision to forgo an audit of the entire twenty-one years of operation of the catering business was all the equitable relief that the taxpayer deserved.
 

 Duval
 
 is the only case of which this court is aware in which a court has granted a reduction in the amount of a tax held to be lawfully due. Although in later cases our Supreme Court and Appellate Court have cited
 
 Duval
 
 with approval, in none of those cases was a
 
 *306
 
 reduction in the amount of tax involved. In any event,
 
 Duval
 
 is distinguishable because the taxpayer in that case apparently did not benefit from her failure to collect the sales tax from her customers, unlike this plaintiff, which did benefit from the failure of its Connecticut vendors to collect the tax on sales to the plaintiff.
 

 It is unclear to this court why reliance, however reasonable and bona fide, on erroneous tax advice should warrant a reduction in the amount of taxes due. If the correct advice had been given, the taxpayer would have had to pay the full amount of the tax, as other taxpayers, who received the proper advice and followed it, have done. Those who have not paid lawfully imposed taxes ought not to be treated more favorably than those who have paid such obligations in full. This court is not inclined to encourage taxpayers to rely on the least competent tax professionals in the hope that the amount of taxes they owe may be reduced because of their good faith reliance on erroneous tax advice. There is no merit to the plaintiffs claim for an abatement of any portion of the use taxes found to have been due on its in-state purchases.
 

 Ill
 

 INTEREST
 

 The plaintiffs final claim is that the court should exercise its equitable powers to afford some relief with respect to the amount of interest included in the assessment. In
 
 American Totalisator Co.
 
 v.
 
 Dubno,
 
 supra, 210 Conn. 410, our Supreme Court upheld the judgment of the trial court in setting aside the interest on an assessment, holding that it was within the discretion of the trial court to waive such interest on the basis of its finding that “ ‘each of the plaintiffs had a firm and reasonably held belief in the correctness of its legal position and that none of them brought suit for delay.’ ” The reviewing court relied on its earlier decision,
 
 H.
 
 
 *307
 

 B. Sanson, Inc.
 
 v.
 
 Tax Commissioner,
 
 supra, 187 Conn. 581, in which the trial court, after setting aside the penalty, had refused to grant any relief with respect to interest. The Supreme Court had upheld that result, declaring that “it was within the trial court’s province to consider whether to set aside the interest imposed as part of its review of the deficiency assessment . . . but we also consider the resolution of that issue to be within the court’s sound discretion.” (Citations omitted.) Id., 587-88. Those decisions do not provide any useful guidance to a trial court in deciding whether a taxpayer who has qualified for an abatement of the penalty imposed by the commissioner, as this plaintiff has done, should be given further relief with respect to interest.
 

 On the basis of precedent, this court might well have been inclined to modify the portion of the interest assessment resulting from the application of a statutory interest rate that substantially exceeds lending rates in the commercial market. Taxpayers who fail to pay their taxes when due because of a mistaken but honest and nonfrivolous belief that those taxes are not lawful, however, would receive a benefit not available to other taxpayers, if interest were set aside entirely. They would have had the use without charge of what ultimately was determined to be the state’s money as a reward for ignorance or misinterpretation of the law. No equitable principle would support that result.
 

 In any event, speculation as to what the court might have done in regard to abatement of interest has become an academic exercise because of the enactment on June 9, 1989, of General Statutes § 12-33a, which provides: “The court shall not waive statutory interest on any amount of tax for which any person is liable pursuant to the provisions of chapter ... 219 [sales and use taxes] . . . and which is not paid within the
 
 *308
 
 time specified by law.” The statute was made “applicable to appeals taken to the superior court on or after [that] date” and plainly affects this appeal, which was filed on November 30, 1990. Public Acts 1989, No. 89-343, § 17. The testimony at the judiciary committee hearing on the bill indicates that the commissioner proposed this enactment for the purpose of overruling
 
 American Totalisator Co.
 
 v.
 
 Dubno,
 
 supra, 210 Conn. 401, which had upheld the trial court’s exercise of discretion in setting aside the interest in a tax appeal, and that the legislature was fully aware of that intention.
 

 Despite the enactment of § 12-33a, the plaintiff persists in its claim for an interest abatement on three grounds: (1) the statute should be interpreted not to apply to interest that had accrued on delinquent taxes prior to its effective date, June 9, 1989; (2) because the statutory interest rates applicable to tax deficiencies are so much higher than market rates, the excessive portion constitutes a penalty, regardless of its legislative label as “interest,” that equity will not enforce and that § 12-33a does not purport to affect. The plaintiff also maintains that, if the statute is construed to preclude all relief with respect to interest, it is unconstitutional because: (1) it violates provisions of our state constitution regarding the separation of powers; and (2) it results in a denial of due process by making the commissioner’s determination of interest unreviewable by the judiciary.
 

 A
 

 The plaintiffs claim that § 12-33a is inapplicable to any interest that accrued prior to June 9, 1989, when the statute became effective, requires a careful scrutiny of its text and legislative history in order to ascertain the intention of the legislature. The prohibition is against waiving “statutory interest on any amount of tax for which any person is liable . . . and which is not paid
 
 *309
 
 within the time specified by law.” This court has determined that the plaintiff was liable for the taxes on which interest had accrued prior to the enactment of § 12-33a and it is undisputed that those taxes were not paid when due.
 

 The plaintiff argues that the statute should be construed to operate only prospectively in accordance with the presumption that statutes modifying substantive rights or creating new obligations are not intended to have any retrospective effect. General Statutes § 55-3;
 
 Massa
 
 v.
 
 Nastri,
 
 125 Conn. 144, 146-47, 3 A.2d 839 (1939). Section 12-33a, however, neither creates any new obligations nor modifies any substantive rights of the plaintiff. It was liable for the interest that had accrued on its delinquent taxes before the statute became effective, although its liability had not then been determined in a court of law, and that liability was not changed by the statute. The only right the plaintiff has lost as a result of the act is the procedural right to seek on equitable grounds an abatement of the interest provided by statute on delinquent taxes.
 

 The legislative history reveals only that § 12-33a was enacted for the purpose of overruling
 
 American Totalisator Co.:
 
 “It was in response to a Supreme Court decision that came down on March 14, 1989 entitled ‘American [Totalisator Co.]’ ”; 32 H.R. Proc., Pt. 38,1989 Sess., pp. 13,382-83, remarks of Representative Douglas C. Mintz; “[t]he bill would remove power in the Superior Court to waive the interest a person owes on his taxes when he appeals the tax assessment. Previously the court has exercised this authority to waive interest in an effort to grant equitable relief.” 32 S. Proc., Pt. 11, 1989 Sess., pp. 3887-88, remarks of Senator Anthony V. Avallone. Because the legislature disagreed with the manner in which the Superior Court had exercised its authority pursuant to § 12-422 to “grant such relief as
 
 *310
 
 may be equitable” and sought to preclude interest abatement from that authority, it is reasonable to infer that it intended to effectuate that purpose as soon as practicable by applying it to all appeals except those already pending in accordance with General Statutes § 1-1 (u).
 

 In
 
 Circle Lanes of Fairfield, Inc.
 
 v.
 
 Fay,
 
 195 Conn. 534, 489 A.2d 363 (1985), the court was confronted with a similar situation, when the legislature enacted a statute overruling the holding in
 
 Hirschfeld
 
 v.
 
 Commission on Claims,
 
 172 Conn. 603, 376 A.2d 71 (1977), that a claimant could appeal from a decision of the claims commissioner on certain grounds pursuant to our Uniform Administrative Procedures Act. The
 
 Circle Lanes of Fairfield, Inc.
 
 court, sua sponte, applied the statute retroactively to the case before it, which had been pending on appeal before its enactment. The statute provided that the decision of the claims commissioner “shall be final and conclusive on all questions of law and fact and shall not be subject to review except by the general assembly.” Public Acts 1982, No. 82-167, § 6; General Statutes § 4-164. The court concluded that the statute should be read “as a clarification of the Superior Court’s ongoing lack of jurisdiction to hear appeals from the claims commissioner.”
 
 Circle Lanes of Fairfield, Inc.
 
 v.
 
 Fay,
 
 supra, 541.
 

 In several other cases the legislative overruling of a judicial interpretation of a statute by an amendment thereto has been treated euphemistically as a “clarification” of the original legislative intent and given a retroactive application when substantive rights are not affected.
 
 State
 
 v.
 
 Magnano,
 
 204 Conn. 259, 283-84, 528 A.2d 760 (1987);
 
 State
 
 v.
 
 Blasko,
 
 202 Conn. 541, 547, 522 A.2d 753 (1987);
 
 State
 
 v.
 
 One 1977 Buick Automobile,
 
 196 Conn. 471, 479, 493 A.2d 874 (1985). “If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act . . . .” 1A J. Sutherland, Statutory
 
 *311
 
 Construction (4th Ed. Sands 1985 Rev.) § 22.31. “The legislature has the power to make evident to us that it never intended to provide a litigant with the rights that we had previously interpreted a statute to confer.”
 
 State
 
 v.
 
 Magnano,
 
 supra, 284.
 

 Because § 12-33a was drafted to remove the jurisdiction of the Superior Court to consider an abatement of statutory interest as part of its review of a tax appeal, it should be viewed as a procedural or jurisdictional statute not impacting substantive rights. It should be applied retroactively to all appeals except those pending at the time of its enactment, as its terms expressly provide. The legislature must have been concerned about the question of retroactivity when it provided that § 12-33a would apply to all appeals taken on or after its enactment and, perhaps redundantly, excepted only pending cases. P.A. 89-343, § 17.
 

 B
 

 The plaintiff claims that, even if § 12-33a must be constructed retroactively to preclude any relief with respect to interest, it does not bar review of the penalty portion of the assessment. Relying on that unassailable premise, the plaintiff contends that a substantial portion of the interest included in the assessment, as well as that since accrued, constitutes a penalty, despite its designation by § 12-415 (2) as “interest.” It cites several cases in which courts have held provisions for interest on delinquent taxes at rates substantially greater than those prevailing in the marketplace to constitute penalties in reality. See
 
 New York
 
 v.
 
 Jersawit,
 
 263 U.S. 493, 44 S. Ct. 167, 68 L. Ed. 405 (1924);
 
 United States
 
 v.
 
 Nelson,
 
 91 F. Sup. 557 (N.D. Ill. 1949);
 
 In re Denver & R. G. W. R. Co.,
 
 27 F. Sup. 983 (D. Col. 1939). If part of the interest charges imposed by § 12-415 should be classified as a penalty, the conclusion reached in part II that the statutory penalty should be abated might well apply here.
 

 
 *312
 
 The cases cited, however, involved federal statutes that barred the enforcement of the penalties imposed by state law in the particular proceeding involved and merely illustrate the application of the rule of federal supremacy. No authority has been presented that would justify a reduction in the interest rates established by § 12-415 simply because they are much greater than market rates and part of the interest accrued may thus be deemed a penalty. The record of the judiciary committee hearing that preceded the enactment of § 12-33a plainly indicates that the legislators were fully aware that interest rates on delinquent state taxes were much higher than existing commercial rates. The commissioner testified at the hearing that the department needed to create an incentive so that taxpayers would not regard the state as an alternative lending institution by delaying their tax payments, as would likely occur if there were no great difference between commercial lending rates and the rates specified for delinquent taxes.
 

 C
 

 The plaintiffs claim that, by prohibiting any reduction in statutory interest rates, § 12-33a violates provisions of our state constitution relating to the separation of powers would have more substance if it were not being raised in the context of an administrative appeal. “Appeals to courts from administrative authorities exist only under statutory authority.”
 
 Norwich Land Co.
 
 v.
 
 Public Utilities Commission,
 
 170 Conn. 1, 6, 363 A.2d 1386 (1975). There was no jurisdiction in the Superior Court prior to the adoption of our state constitution in 1818 to consider such appeals or grant such relief as a reduction of statutory interest on delinquent taxes. See
 
 Styles
 
 v.
 
 Tyler,
 
 64 Conn. 432, 449-50 (1894); see also
 
 Szarwak
 
 v.
 
 Warden,
 
 167 Conn. 10, 32-33, 355 A.2d 49 (1974). Such jurisdiction was conferred on the court in 1947, when § 12-422 was enacted to authorize the grant
 
 *313
 
 of “such relief as may be equitable” in an appeal from a decision of the tax commissioner. Certainly the legislature has the constitutional authority to modify its prior grant of jurisdiction to the Superior Court to remove the subject of statutory interest therefrom, just as it may amend any other statute.
 

 The remaining claim, that § 12-33a violates the due process clause of the federal constitution as well as the right to redress provision of article first, § 10, of our state constitution by denying a taxpayer any opportunity for judicial review of an assessment of interest by the commissioner is similarly flawed. The statute does not preclude review of an assessment of interest that has not been made pursuant to law, but merely removes the power of the court to “waive statutory interest on any amount of tax for which any person is liable.” The court has not been deprived of jurisdiction to consider claims that interest has been miscalculated or otherwise unlawfully imposed. Gone, however, is the discretionary power to reduce interest lawfully imposed simply because of the absence of fraudulent intent, the presence of financial hardship or the existence of some other reason.
 

 “There is no federal constitutional right to an administrative appeal when the claimant has been afforded an adequate administrative hearing and the administrative decision does not implicate a fundamental constitutional right or a constitutionally suspect classification such as race, nationality or alienage.”
 
 Circle Lanes of Fairfield, Inc.
 
 v.
 
 Fay,
 
 supra, 195 Conn. 542. Similarly, there is no such state constititional right, because administrative appeals are created solely by statute.
 
 Id.) Norwich Land Co.
 
 v.
 
 Public Utilities Commission,
 
 supra, 170 Conn. 6. Since there is no such constitutional right, the modification of the jurisdiction of the Superior Court over appeals from the tax commissioner effectuated by § 12-33a to remove its authority to tamper with
 
 *314
 
 statutorily imposed interest raises no constitutional concerns. The court concludes that the interest component of the assessment may not be modified.
 

 It is ordered that a final judgment enter sustaining the appeal with respect to the claim for abatement of the penalty imposed by the department with respect to the use tax deficiency on the plaintiffs in-state purchases but denying its other claims for relief.