[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, BRICO, LLC, appeals from a decision of the defendant, Department of Motor Vehicles ("DMV"), revoking its used car dealer's license after a hearing held pursuant to General Statutes § 14-64.
The plaintiff received a used car dealer's license from DMV on June 25, 1999. (Return of Record ("ROR"), Item 3, Transcript, p. 6.) Subsequently, on March 13, 2000, the plaintiff was summoned to a hearing regarding suspension and/or revocation of its license, to be held on April 19, 2000. (ROR, Item 2.) In the final decision, the hearing officer made the findings of fact that may be summarized as follows:
 1. On or about September 13, 1999, an official of the DMV's Dealers and Repairers Division conducted a site inspection to determine whether a principal of the plaintiff, Blake Johnson, had acquired a Connecticut operator's license.[1] At that time, the DMV official observed that the plaintiffs facility did not appear to comply with the requirements of law governing used car dealerships. As a result, a complete reinspection of the plaintiffs premises was conducted on October 16, 1999.
 2. In its application for a used dealer license, the plaintiff submitted a site plan showing the area to be used in connection with the business. There were three businesses being operated in the area designated to be the dealership area on the plan submitted to the Dealer and Repairer Division.
3. The primary business at the site was Briteside, Inc., an asbestos abatement company. Evidence from Johnson showed that Briteside is a 1.7 million dollar business, but that the demand for these services is decreasing steadily. The used car business was established by Johnson to explore other business ventures beyond asbestos removal. CT Page 8058
 4. The reinspection showed that the service area, as designated on the site plan referred to above, was taken up with a large amount of asbestos removal equipment, and that there was not sufficient area remaining to service two motor vehicles.
 5. The reinspection indicated that the plaintiff did not have sufficient tools and equipment to operate a service department for motor vehicles. There were no lifts or electronic test equipment.
 6. The plaintiffs records on reinspection showed that it had made only one vehicle sale since June, 1999, and that was to one of Mr. Johnson's supervisors. The plaintiff did not have records on the premises pertaining to vehicle purchase, such as purchase orders, warranties, invoices and odometer statements.
 7. On reinspection, the plaintiff could not produce copies of supplemental identification cards, and had no records regarding the location of its dealer plates.
 8. There were no vehicles on the premises at the time of reinspection. The outdoor sales area was occupied by several box trailers. The area designated as vehicle storage contained a truck used by Briteside, a van, and several pieces of large construction equipment, including a payloader.
 9. The Town of Bloomfield granted zoning approval for the plaintiffs used car dealer business, with the condition that sales not be made to the general public.
 10. According to Johnson, no repair work was being done on vehicles. There was no mechanic on staff during regular business hours; Johnson relied upon a mechanic to whom he had access that had a full-time job elsewhere.
11. The plaintiff has purchased five cars and sold three. He is exploring the possibility of selling vehicles on the internet. CT Page 8059
 12. Johnson stated that he was unaware that the area designated in the dealer site plan had to be used exclusively in conjunction with the dealership. He indicated that the equipment which occupies the space designated as the repair area is capable of being moved in one-half hour.
 13. Johnson also indicated that he has purchased additional tools for the service function of the dealership.
(ROR, Item 15, Decision, pp. 1-2.)
Based upon these findings of fact, the hearing officer concluded that the plaintiff had violated several state statutes and regulations of the DMV, including failing to keep proper records of dealer plates (General Statutes §§ 14-60 (b)(3)(A)-(D)); failing to have a proper repair area (Reg., Conn. State Agencies § 14-63-3 (d)(2)); failing to have a mechanic having thorough knowledge of the product handled (Reg., Conn. State Agencies § 14-63-3 (e)(1)); failing to have sufficient tools and equipment for proper servicing (Reg., Conn. State Agencies §14-63-3 (e)(2)); failing to have a proper area for the display of used vehicles (Reg., Conn. State Agencies § 14-63-3 (d)(1)). Based upon these violations, the hearing officer imposed a penalty of revocation of the plaintiffs license under General Statutes § 14-64 (5) (licensee not qualified to conduct licensed business). Further, the hearing officer stated: "This decision shall not affect [the plaintiffs] ability to acquire a dealer and repairer license in the future provided that [the plaintiffs] facility is in compliance with Connecticut Statutes and Regulations governing dealer licenses." (ROR, Item 15, p. 3.)
The plaintiff has timely appealed from the revocation of his used car dealer's license. The plaintiff is aggrieved. See Buscetto v. Departmentof Motor Vehicles, Superior Court, judicial district of New London at Norwich, Docket No. 112305 (April 30, 1998, DePentima, J.) (22 Conn.L.Rptr. 108) ("Since the decision of the defendant suspended the plaintiffs license to do business, a significant personal and legal interest, the court finds that the plaintiff is aggrieved within the meaning of General Statutes § 4-183 (a). SeeMed-Trans of Connecticut, Inc. v. Dept. of Public Health andAddiction Services, 242 Conn. 152, 158-59 (1997).")
[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act . . . and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision CT Page 8060 requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of discretion . . . (Citations omitted; internal quotation marks omitted.)Murphy v. Commissioner of Motor Vehicles, 254 Conn. 333, 343 (2000).
"Judicial review of the decision of an administrative agency is limited. . . . [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) O'Callaghan v. Commissionerof Social Services, 53 Conn. App. 191, 203 (1999).
Finally, the courts have shown great deference to the construction of statutes and regulations made by the agency charged with their enforcement. Anderson v. Ludgin, 175 Conn. 545, 555-56 (1978).
As an initial claim, the plaintiff points out that it had disclosed to the DMV at the time it applied for the used car dealer's license the "start-up" nature of its business. The initial inspection leading to the notice of hearing regarding a possible revocation occurred in September, 1999, only three months after the license issued. From this, the plaintiffs attorney emphasized at oral argument a claim that the DMV should be estopped to start revocation proceedings.
An argument that a disclosure at the time of application should negate a subsequent revocation proceeding has been rejected in other cases. As Judge Shea remarked in William Raveis Real Estate, Inc. v. Commissionerof Revenue Services, 44 Conn. Sup. 1, 7 (1995), aff'd, 43 Conn. App. 744
(1996): An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past . . . (Citation omitted; internal quotation marks omitted.) In a similar case to the plaintiffs, a pharmacist argued that the Pharmacy Board was estopped from revoking his license because he had spent money improving CT Page 8061 his business after the Board became aware of the violations for which the license was to be revoked. The Ohio Supreme Court rejected this argument as follows:
 It is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function. . . .
 The board cannot be estopped from its duty to protect the public welfare because it did not bring a disciplinary action as expeditiously as possible . . . If a governmental agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. . . . To hold otherwise would be to grant defendants a right to violate the law.
(Citations omitted.) Ohio State Bd. of Pharmacy v. Frantz,555 N.E.2d 630, 633, 51 Ohio St.3d 143 (Ohio 1990).
In any event, the hearing officer here made the finding of fact that a site plan had been submitted to the DMV at the time of the original application. (ROR, Item 15, ¶ 4.) This plan was admitted into evidence at the hearing. (ROR, Item 5.) On the map areas are blocked out for display for automobiles and for service. When the inspector went to the scene in October, 1999, he found the area marked "exist warehouse" and "service" on the site plan "was filled with asbestos abatement equipment." (ROR, Item 3, p. 14.) The area marked "display" on the site plan was "taken up" with trailers. (ROR, Item 3, p. 40.) These facts alone defeat any claim that the DMV is estopped. The situation at the time of the plaintiffs application for a license was not the same as at the time of the subsequent inspection for possible revocation of the license.Commissioner of Environmental Protection v. Connecticut Bldg. WreckingCo., 227 Conn. 175, 189 n. 12 (1993).
The plaintiff further argues that the DMV erred in revoking his license merely because he made use of "any common areas or facilities" with another business, citing General Statutes § 14-52a (b). The court must apply the language of the statute as written. River Dock Pile,Inc. v. OG Industries, Inc., 219 Conn. 787, 805 (1991). Section 14-52a
(b) specifically applies to the granting or renewal of a repairer's license. The revocation of a license of a used car dealer does not fall within this statute. CT Page 8062
The applicable requirements for the used car dealer's facilities are set forth in § 14-63-3 of the Regulations of Connecticut State Agencies: "(d) Proper facilities: (1) For the display of used cars; (2) a repair department capable of taking care of at least two motor vehicles simultaneously, exclusive of a grease pit or a rack." DMV did not abuse its discretion in concluding that the plaintiff was not in compliance with the regulation, and in rejecting the plaintiffs claim that the display and repair areas were immediately capable of use once the heavy equipment was moved out.
The plaintiff further takes issue with another ground of the final decision involving absence of a mechanic on the plaintiffs premises. According to the plaintiff: "The gist of this dispute is that DMV asserts that BRICO must employ a mechanic as a full time employee. BRICO asserts that the regulations simply require that a mechanic be available to it when repairs or inspections are needed." (Plaintiffs Brief, p. 5.) The plaintiffs principal Johnson testified that his brother-in-law is available on an "as needed" basis. He does have another job, however. (ROR, Item 3, pp. 55-57.)
Section 14-63-3 (e)(1) of the Regulations of Connecticut State Agencies requires that at a minimum a used car dealer provide "[a]t least one mechanic having thorough knowledge of the product handled. . . ." The hearing officer's decision does not find the plaintiff at fault for failing to employ a full-time mechanic, but only for "failing to have a mechanic having thorough knowledge of the product handled."[2]
(Emphasis added.) (ROR, Item 15, p. 2.) There was sufficient evidence in the record to support this conclusion of the hearing officer. The plaintiff stated on its application that its business hours would be 8 a.m. to 5 p.m. Monday through Friday. (ROR, Item 6, p. 4.) Johnson would have to telephone his brother-in-law at his place of employment and a customer would have to wait for him to make arrangements with his employer and for him to take a trip to the plaintiffs premises. The DMV did not abuse its discretion in concluding that this arrangement was not "having a mechanic" available at the premises.
Section 14-63-3 (e)(2) of the Regulations of Connecticut State agencies provides that the used car dealer must obtain "sufficient tools and equipment for proper servicing." The plaintiff alleges that it listed the tools it was obtaining on its initial application and that these tools were present at the subsequent re-inspections. Other tools were available as needed from the other businesses on the premises. It is contended that the DMV cannot impose "new requirements and ownership rules which do not appear in any statutes, regulations, or license applications." (Plaintiffs Brief, p. 11.) CT Page 8063
The hearing officer found based on the testimony of inspector Beausoleil "that the Respondent did not have sufficient tools and equipment to operate a service department for motor vehicles. There were no lifts or electronic test equipment." (ROR, Item 15, p. 2.) The mere listing of some tools on the DMV application form cannot substitute for a re-inspection that discovers the lack of lifts at a repair station. The DMV did not abuse its discretion in reaching the conclusion that sufficient tools or equipment were not available for "proper servicing."
The plaintiff admits that Johnson misconstrued the law requiring record-keeping of dealer plates. General Statutes §§ 14-60 (b)(A), (B), (C) and (D). The claim is made that this violation was not done willfully and was quickly corrected. (Plaintiffs Brief, p. 13.) The decision of the DMV to find a violation on this ground is thus essentially not contested.
Finally, the plaintiff claims that the penalty of revocation was too harsh. Since the plaintiff had not actually engaged in the used car business, and no public consumer complaint was involved, no alternative monetary penalty or forfeiture bond or restitution was appropriate. Furthermore, the DMV's decision does not prevent the plaintiff from acquiring a used car dealer's license in the future, upon satisfying statutory and regulatory requirements. The hearing officer did not abuse her discretion in imposing revocation as a penalty. Murphy v.Commissioner of Motor Vehicles, supra, 254 Conn. 343; Reddy v. CommodityFutures Trading Commission, 191 F.3d 109, 123 (2d Cir. 1999) ("[A]n agency sanction within statutory limits can be upset only if it reflects an abuse of discretion. . . ." (Citations omitted.)) The plaintiffs appeal is therefore dismissed.
 ____________________ HENRY S. COHN, JUDGE