[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the defendant State of Connecticut, Department of Social Services ("DSS"), brought pursuant to General Statutes § 4-183 et seq., under the Uniform Administrative Procedure Act ("UAPA"). DSS had denied the plaintiff's application for Title XIX medicaid benefits because she exceeded the eligibility asset limit. This appeal to the Superior Court followed.
The factual background in this matter is as follows. The plaintiff, Dorothee Gross, an eighty-one year old woman, has resided at Courtland Gardens Health Center in Stamford, Connecticut since 1994. On December 13, 1996, she applied for medical assistance under the medicaid program, Title XIX of the Social Security Act (42 U.S.C. § 13-96a et seq.), to pay for her long term care. The application was completed and filed on her behalf by Joan Mooney, an Elder Law Paralegal with the law firm of Linnea J. Levine, Esq., the plaintiff's authorized representative before DSS.
Previously, on October 8, 1996, Ms. Mooney had instructed the plaintiff's son, Frederick Kalen, to purchase an irrevocable funeral plan for the plaintiff. On October 10, 1996, Mr. Kalen purchased a prepaid funeral plan with Garlick-Hellman Funeral Home in Yonkers, New York for $4,800, the amount allowed by Connecticut law. On February 10, 1997, the plaintiff's CT Page 4327 representative, Ms. Mooney, sent a copy of the prepaid plan to Russell Bonaccorso, the DSS case worker assigned to the plaintiff. There were other communications between February 12, 1997 and April 15, 1997 between Mr. Bonaccorso and Ms. Mooney.
On April 15, 1997, DSS sent the plaintiff a notice denying her application for medicaid benefits on the ground that she had failed to provide DSS with enough information to determine her eligibility. In an accompanying letter to Ms. Mooney dated April 15, 1997. Mr. Bonaccorso clarified that the missing information was not being sought from the plaintiff directly, but from Courtland Gardens Nursing Home and indicated that her application would be reopened when DSS received the missing information. on April 18, 1997, the plaintiff's representative sent a letter to Courtland Gardens Nursing Home requesting the release of the necessary information. On June 6, 1997, the plaintiff's representative sent a letter to Mr. Bonaccorso informing him that she had requested the necessary information from Courtland Gardens, attaching a copy of her April 18, 1997 letter, and requesting an update from DSS on the status of the case.
Thereafter, on July 21, 1997, DSS reopened and reviewed the plaintiff's application. DSS determined that the October 10, 1996, prepaid funeral plan which the plaintiff had submitted was revocable under New York law. DSS concluded that since the plan was revocable, the $4,800 held pursuant to the plan was accessible to the plaintiff and put her available assets above the Medicaid limit of $1,600. See Uniform Policy Manual ("UPM") §§ 4005.05 and 4005.10.A.2.a.
On July 30, 1997, Mr. Kalen, the plaintiff's son, substituted the previous funeral plan with an irrevocable one. Thereupon, DSS granted the plaintiff medicaid assistance effective July 1, 1997 pursuant to UPM § 4005.10.
On September 17, 1997, the plaintiff requested an administrative hearing before DSS to contest the effective date of her benefits. DSS granted that request and a fair hearing was held on October 28, 1997 before hearing officer Rafael R. Garbalosa. At the hearing, the hearing officer identified the following issues: "(1) Was the funeral contract (burial fund) established on October 10, 1996 irrevocable? If not, were the assets in the burial fund accessible to the [plaintiff]? (2) Was the [plaintiff] over the Medicaid asset limit prior to July 1, 1997? (3) Is there "undue hardship" as provided by § 3028.25 CT Page 4328 (B)? (4) Did the Department fail to act on the [plaintiff's] Medicaid application in a timely manner?" (Return of Record ("ROR"), Notice of Decision ("Decision"), p. 10.)
On December 18, 1997, the fair hearing officer rendered a decision denying the plaintiff's petition. The fair hearing officer concluded that the $4,800 which the plaintiff placed in the revocable burial fund her son established on October 10, 1996, was accessible to her and that those funds, minus the $1,200, were countable assets in the determination of her eligibility for medicaid through June 30, 1997, the last full month before she converted the funds to an irrevocable burial fund. (ROR, Decision, p. 12.) The hearing officer also concluded that, because the undue hardship provision of UPM § 3028.25 (B) applied to a penalty period imposed as a result of a transfer of assets and not as a result of excess assets, the plaintiff could not claim relief under its provisions. (ROR, Decision, p. 12.)
The plaintiff requested reconsideration of the hearing officer's December 18, 1997 decision on January 5, 1998. The plaintiff contended that the hearing officer failed to make findings regarding her claim that she relied on the caseworker's April 15, 1997 letter in not converting her revocable burial contract to an irrevocable one and that her reliance precluded DSS from denying her benefits for the period of December, 1996 through June, 1997, when her assets exceeded the medicaid limit. The plaintiff further contended that the hearing officer failed to make any finding regarding her claim that DSS' untimely processing of her application entitled her to benefits for the period in question. (ROR, Petition for Reconsideration of Decision Dated December 18, 1997 Because of Errors of Law and Violation of the Governing Federal Statutes, pp. 170-73.)
On March 2, 1998, the hearing officer issued his notice of reconsideration decision, which denied the plaintiff's request for reconsideration. The denial, after reconsideration, was based on the following: (a) the plaintiff's burial fund was accessible to her until it was made irrevocable in July, 1997, and therefore, was a countable asset through June 30, 1997; (b) there was no "undue hardship"; (c) although DSS did not process the application in a timely manner, the plaintiff's remedy was to request from DSS an immediate determination of eligibility or request an administrative hearing and the matter is moot once the eligibility determination has been made; and (d) the plaintiff's CT Page 4329 argument of equitable estoppel fails to satisfy the necessary elements of the doctrine in that the plaintiff failed to change her position in reliance on facts thereby incurring some injury. (ROR, Notice of Reconsideration, pp. 4-8.)
Thereafter, the plaintiff brought this administrative appeal in a timely fashion.
This court's "review of an administrative appeal is limited. Our Supreme Court has established a firm standard that is appropriately deferential to agency decision making, yet goes beyond a mere judicial `rubber stamping' of an agency's decisions. Connecticut Light Power v. Dept. of Public UtilitiesControl, 219 Conn. 51, 57, 591 A.2d 1231 (1991); Woodbury WaterCo. v. Public Utilities Commission, 174 Conn. 258, 260,386 A.2d 232 (1978). Courts will not substitute their judgment for that of the agency where substantial evidence exists on the record to support the agency's decision, and where the record reflects that the agency followed appropriate procedures. Samperi v. InlandWetlands Agency, 226 Conn. 579, 587, 628 A.2d 1286 (1993);Lieberman v. State Board of Labor Relations, 216 Conn. 253, 262,579 A.2d 505 (1990); Baerst v. State Board of Education,34 Conn. App. 567, 571, 642 A.2d 76, cert. denied, 230 Conn. 915,645 A.2d 1018 (1994)." (Internal quotation marks omitted.) Cabasquini v.Commissioner of Social Services, 38 Conn. App. 522, 525-26, cert. denied, 235 Conn. 906 (1995).
A court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v. Freedom ofInformation Commission, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Emphasis in original; internal quotation marks omitted.) Perkins v. Freedom ofInformation Commission, 228 Conn. 158, 164-65 (1993).
The medicaid program is a "joint federal-state venture providing financial assistance to persons whose income and CT Page 4330 resources are inadequate to meet the cost of necessary medical care. . . ." (Citation omitted.) Burinskas v. Dept. of SocialServices, 240 Conn. 141, 148 (1997). Although a state's participation is voluntary, once it has elected to participate, it must "develop a plan, approved by the secretary of health and human services, containing reasonable standards . . . for determining eligibility for and the extent of medical assistance." Id. Under General Statutes § 17b-260, the commissioner of social services is authorized to take advantage of the medical assistance program provided in Title XIX of the Social Security Act, codified as 42 U.S.C. § 1396 et seq., and under § 17b-2, DSS administers the medicaid program.
DSS has promulgated regulations as part of its uniform policy manual to administer the medicaid program. General Statutes §17b-262. Under the pertinent provisions of the DSS's uniform policy manual, the asset limit for the medicaid program is $1,600 for one, and eligibility is determined the first day of the month in which the applicant reduces her equity in counted assets to within the asset limit. Uniform Policy Manual (UPM) §§ 4005.10, 4005.15. The burden is on the applicant to demonstrate that an asset is inaccessible. UPM § 4015.50A. In the present case, the asset which was the trigger for the plaintiff's ineligibility determination was the $4,800 revocable prepaid funeral plan purchased by the plaintiff's son. The plaintiff contends that the DSS decision denying medicaid assistance should be reversed by this court for a number of reasons.
First, the plaintiff argues that DSS is equitably estopped from denying her assistance from February 1, 1997 through June 30, 1997 because of the failure to promptly respond to the issue raised and because of false assurances to her. This estoppel argument along with a timeliness issue were the reasons for a reconsideration hearing before the hearing officer.
The plaintiff bases her estoppel argument on the fact that she submitted, through her representatives, on February 10, 1997, a copy of the funeral fund prepaid plan and requested that the DSS caseworker contact the funeral home to confirm that the funeral plan was, in fact, irrevocable. The plaintiff further argues that she gave up her right to a fair hearing in reliance on the letter of April 15, 1997 from the DSS caseworker, Mr. Bonaccorso because she assumed that DSS had everything it needed to grant medical assistance retroactive to December 1, 1996. That letter, dated April 15, 1997, and written on State of CT Page 4331 Connecticut, Department of Social Services stationery, provides as follows:
 Regarding: Dorothee Gross Courtland Gardens 53 Courtland Ave. Stamford, Connecticut 06902-3401
Dear Ms. Mooney:
 I am writing to let you know that I did not deny Ms. Gross' application for Medicaid due to your failure to provide any information. I have received everything I need from you to grant the assistance effective December 1, 1996. However, Courtland Gardens has failed to provide me with the information I need from them in order to grant the case. Once I received this information, I will reopen the application. Specifically, I need the medical report (Form W-10) and the admission form (W-352)
Thank you.
 Russell J. Bonaccorso Jr Eligibility Services Worker cc: Frederick Kalen
(ROR, p. 161.)
The above letter accompanied a denial notice which DSS sent to the plaintiff on the same date. The denial notice informed the plaintiff that DSS was denying her application because DSS had not received all the information it needed to determine her medicaid eligibility.
In order to prevail on her claim of estoppel, the plaintiff must have proven at the hearing, that the State of Connecticut did or said something which she believed, which induced her to act on that belief, and that as a result thereof, she was injured. Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148
(1987). In Kimberly-Clark, supra, the court stated that "estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Citations omitted.) CT Page 4332Kimberly-Clark Corporation v. Dubno supra, 148; Zoning Commissionv. Lescynski, 188 Conn. 724, 731-32 (1988). Finally, the person claiming estoppel has the burden of showing that he or she exercised due diligence to ascertain the truth and that he or she not only lacked knowledge of the true state of things but had no convement means of acquiring that knowledge. William Raveis RealEstate. Inc. v. Commissioner of Revenue Services,43 Conn. App. 744, 753 (1996).
In the present case, the plaintiff met her burden of proving equitable estoppel, notwithstanding the legal conclusion of the hearing officer to the contrary. While it is true, as found by the hearing officer, that the plaintiff's representatives had made the initial error of making the burial fund revocable instead of irrevocable, that caused her ineligibility for benefits, and that error was not caused by anything DSS did or did not do, the hearing officer's conclusion that the plaintiff failed to establish a necessary element of estoppel, which requires that the other party change its position on reliance on those facts, thereby incurring some injury, is incorrect. The plaintiff did not take any action based on the April 15, 1997 denial of her claim because of the letter from her caseworker which accompanied the denial. That letter, written on official State of Connecticut, Department of Social Services stationery, provided in pertinent part: "I have received everything I need from you to grant the assistance effective December 1, 1996. However Courtland Gardens has failed to provide me with the information I need from them in order to grant the case. Once I received this information, I will reopen the application." (ROR, p. 161.) Having been informed by DSS that the application would be granted upon receipt of the information from the nursing home, the plaintiff did change her position, in that she took no further action concerning the prepaid funeral plan or any other information or documentation which had been provided by her to DSS. Had the application been denied at that point, the plaintiff could have asked for a fair hearing. Additionally, had the plaintiff been so informed, she may have replaced the revocable contract with an irrevocable one. Indeed, the hearing officer found that DSS had informed the plaintiff that the burial fund had to be replaced by an irrevocable contract on July 21, 1997, and the plaintiff replaced the revocable funeral contract with an irrevocable contract on July 30, 1997. Clearly, once the plaintiff was informed of the problem, the plaintiff took remedial action. Here, the plaintiff had exercised due diligence throughout the course of the pendency of the application in her CT Page 4333 dealings with DSS. The hearing officer's legal conclusion that the record does not indicate that DSS took any affirmative action that induced the plaintiff to change her position is clearly erroneous. It is true that DSS initially took no action which caused the plaintiff to change her position. However, by virtue of the April 15, 1997 letter to the plaintiff, DSS did take action which induced the plaintiff not to act either in the form of a request for a fair hearing or to change the revocable contract to an irrevocable contract. Using the same time table, had the plaintiff not been lulled into inaction by the April 15, 1997, letter from DSS, the plaintiff could have changed the revocable contract to an irrevocable contract within the month of April. Had that happened, the plaintiff would have been eligible for benefits under UPM § 4005.15, on April 1, 1997.
Here, DSS argues that the caseworker did not have the authority to tell the plaintiff that she met the eligibility requirements. As noted earlier in this opinion, the caseworker informed the plaintiff that he had "received everything I need from you to grant the assistance effective December 1, 1996." Again, this letter was written on State of Connecticut, Department of Social Services stationary by the caseworker assigned to the case. The plaintiff was entitled to rely upon those representations and DSS' contentions to the contrary concerning a lack of authority are unavailing. Under the facts of the present case, the caseworker had the apparent authority to bind DSS. Additionally, DSS failed to advance the lack of authority argument to the hearing officer below.
Also, in the present case, there are special circumstances which make it highly inequitable or oppressive not to estop DSS. In the present case, the uncontroverted evidence before the hearing officer was that the plaintiff was an elderly neglected woman from New York who was brought to Connecticut for medical treatment and left by her only son, Mr. Kalen. When the plaintiff was about to be evicted by the nursing home, the present attorneys agreed to represent her, however, they would not represent the son. This was the same son who was responsible for purchasing the irrevocable funeral plan which turned out to be the source of the plaintiff's problems. (ROR, pp. 187, 191-93.)
As a result of the DSS denial, the plaintiff owes medical bills of some $41,132. The plaintiff claims that the arbitrary delay by DSS in its decision on her application violates both federal and state regulations. It is true that DSS did not CT Page 4334 determine the plaintiff's eligibility in timely fashion. However, as correctly determined by the hearing officer, the plaintiff's relief for that failure was to request a fair hearing under UPM § 1505.35(A)-(D) for an immediate determination of eligibility and/or request an administrative hearing for the purpose of requiring DSS to comply. Once DSS has granted assistance, as in the present case, the issue of timeliness becomes moot. Additionally, here, the reason for the late processing of the plaintiff's application was the failure on the part of the nursing home to provide necessary documentation. No fault has been attributed to DSS for this delay. Accordingly, the plaintiff's claim concerning the delay in the DSS decision must fail.
The plaintiff's final argument is that the DSS decision is grossly inequitable, arbitrary, capricious and an abuse of power. The plaintiff urges this court, pursuant to General Statutes § 4-183 (j)(6), to find that the substantial rights of the plaintiff have been "prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." To the extent discussed above, under equitable estoppel, the DSS determination was grossly inequitable, arbitrary and capricious.
In conclusion, based on the doctrine of equitable estoppel, the plaintiff's administrative appeal is sustained. This matter is ordered remanded to DSS with direction to grant the plaintiff's eligibility for medicaid effective April 1, 1997.
Michael Hartmere, Judge